**Richard CHIRA Plaintiff,**

v.

**COLUMBIA UNIVERSITY IN NEW YORK CITY and "John Doe" 1–10. Defendants.**

No. 03 CV 0840 HB.

United States District Court, S.D. New York.

Oct. 31, 2003.

Richard Chira, Germantown, TN, Pro se.

## OPINION AND ORDER

BAER, District Judge.

Defendant, The Trustees of Columbia University in the City of New York ("Columbia") move to dismiss each of the eight claims in plaintiff's amended complaint. For the following reasons, Columbia's motion is granted.

### I. BACKGROUND

In September 1998, plaintiff Richard Chira ("Chira") enrolled in a masters-degree program in East Asian Studies at Columbia's Graduate School of Arts and Sciences ("GSAS") for the 1998–1999 academic year. (Compl.¶ 3) This one-year program (hereinafter occasionally referred to as the "MARSEA program") was in its inaugural year. Chira, a long-time resident of California, was 65 years old at the time of his enrollment and sought to change careers [1] to become an advisor or consultant on Southeast Asian affairs. (Compl.¶ 8)

While enrolled in GSAS, Chira rented an apartment from Columbia at 15 Claremont Avenue, where he lived from September 1998 to January 31, 2000.[2] (Compl.¶¶ 4–5)

---

1. Chira makes no reference in the pleadings to his previous career, but defendant notes that he practiced law for many years and is admitted to the Bars of New York, California, Washington, D.C., and the U.S. Supreme Court.

2. Both the apartment and the building were owned, managed, supervised, operated, serviced and maintained by Columbia. (Compl.¶¶ 4–5) The lease, dated August 20, 1998, was for a nine-month term from September 1998 to the end of May 1999 at a monthly rent of $785.00. (*See* Patricia Maher Aff. Ex. C.) On July 15, 1999, Chira and Columbia signed an extension of the lease from June 1, 1999 to December 31, 1999 at a

Chira alleges that Columbia leased the apartment "for the purpose of providing a suitable residence and suitable residential environment in which to carry on scholarly postgraduate study." (Compl.¶ 8) However, during the period of his occupancy, the apartment and the building were allegedly "unsuitable as a graduate student residence, was inimical to scholarly pursuit, inhospitable and unhealthy" due to poor lighting, poor ventilation, and noise. (Compl.¶ 9) He also alleges that he was exposed to a variety of hazards, such as masonry and brick reconstruction of the building's exterior, "incessant sandblasting," and "perennial toxic omissions and pollution." (Compl.¶ 9) Chira contends that these circumstances "constituted, singly and cumulatively, a serious, continuing private nuisance" and caused him to seek escape and to study on campus, "only to be confronted there with detrimental personal physical conditions as hereunder explained." (Compl.¶¶ 9–10)

Chira alleges that Columbia knew about but failed to remedy these conditions, which "were likely to and did cause direct and proximate personal injury and diverse harm to plaintiff." (Compl.¶¶ 11–13, 15) Chira contends that Columbia's acts and omissions[3] were negligent, reckless, willful, wanton breaches of defendant's duty of care owed to him as a tenant and as a student.[4] (Compl.¶ 14) Moreover, Columbia's conduct was in "direct repudiation" of

its representations and promises, express or implied, oral or written, to provide a nuisance-free ... suitable graduate residential accommodation, and that these "conditions of private nuisance" thwarted his "declared, intended, known and understood academic and career purposes." (Compl.¶¶ 14, 16) Chira alleges that Columbia had additional housing available but that it deliberately steered him to this apartment in bad faith for pecuniary motives, fully aware of its unsuitability and the presence of hazardous conditions. (Compl.¶ 17) Moreover, Columbia knew that these conditions were likely to cause him personal injury, given its knowledge of his medical conditions. (Compl.¶ 17) Although Chira viewed the apartment, the true conditions and risks were not visually apparent and thus he had no knowledge of these conditions. (Compl.¶ 18) He was offered the apartment on a take-it-or-leave it basis and was not given any other options if he declined. (Compl.¶ 19) Chira alleges that he requested alternative housing at other locations, which would not have created an undue burden, but that these were all denied. (Compl.¶¶ 18, 44) (He also claims he sought but was refused enrolment in a physical strengthening course. (Compl.¶ 45)) Columbia's Office of Disability Services and Office of Institutional Real Estate were informed in advance and aware of his medical conditions and thus understood his susceptibility and vulnera-

---

monthly rent of $807.00. *See* Maher Aff. Ex. D.

**3.** For example, Chira complains that Columbia "failed to provide window sealing, air ventilation, air conditioning or other protections and safeguards against sandblasting, toxic emissions and pollution; was careless, dilatory and negligent in attending to inoperative, malfunctioning or defunct intercom equipment; [was] dilatory in averting repeated elevator breakdowns and repeated water cut-off, in failing to give seasonal attention to heating and ventilation, in careless sched-

uling of building facade masonry and brick work ..., [and] in failing to restrict or control pets on the premises and other disruptive conduct." (Compl.¶ 15)

**4.** Chira also alleges that because he was classified as "disabled" by Columbia's Office of Disability Services, Columbia owed him an additional duty to prevent or mitigate injury or harm in his residence., which Columbia allegedly breached by creating and perpetuating the private nuisance. (Compl.¶¶ 34–35)

bility to these conditions. (Compl.¶ 19) He alleges that Columbia's assignment of him to this unsuitable housing and its failure to give him access to suitable facilities "constituted in fact and legal effect an essential failure to make 'reasonable accommodation' to his medical condition and medical impairments." Chira alleges that he suffered and continues to suffer numerous physical injuries as a result of this private nuisance and was caused to undergo medical examinations and treatments at various clinics and hospitals.[5]

Chira identifies four causes of action based on the foregoing allegations: 1) private nuisance, 2) strict liability based on abnormally hazardous activities, namely the sandblasting, masonry work, toxic emissions, and pollution at the building, 3) negligence due to Columbia's failure to prevent injury or harm to him in this apartment, 4) failure to make reasonable accommodations for medical conditions in violation of Title III of the Americans with Disabilities Act[6] (42 U.S.C. § 12181 et seq.) and section 504 of the Rehabilitation Act.[7] These four claims are contained in Chira's initial complaint, which was received on January 16, 2003 in the Pro Se Office of this Court, filed with the Clerk of the Court on February 5, 2003, and served on Columbia on June 2, 2003. On June 19, 2003, Chira filed an amended complaint which added four additional claims: 5) breach of contract, 6) monies had and received and monies had and received under false pretext, 7) misrepresentation, 8) educational discrimination. The prayer for relief in his amended complaint includes claims for compensatory damages of $500,000 on all eight counts, $225,000 in punitive damages, attorneys fees and costs, and various equitable relief.[8]

5. His injuries include the following: a new condition of Edema to lower leg, ankle, and foot; aggravated respiratory complications/distress; seratonin-depletion; continuous general physical discomfort; aggravation of "cervical spine radiculopathy and disc herniation;" stress-induced aggravation of gastrointestinal conditions; aggravation of "L/S spine radiculopathy and disc herniation;" severe ankle tendonitis and arthritis, pain and suffering; frequent headaches and constant loss of sleep. (Compl.¶ 20)

6. Although in his complaint he invokes Title II of the ADA, which pertains to discrimination in public services, he states that this was an error and the relief he seeks is under Title III of the ADA, which pertains to discrimination with respect to public accommodations and services operated by private entities, including universities. It provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. In his memorandum in opposition, he states that the relief he seeks is under a different provision of Title III, one which provides provides that "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

7. Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 U.S.C. § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

8. In his original complaint Chira sought $190,000 in compensatory damages for all of the causes of action combined, and an additional $200,000 for punitive damages.

In his amended complaint, he claims that defendant breached a contract, partly written and partly oral, whereby Columbia agreed to admit Chira to the Masters Degree Program and provide "a comprehensive, suitable educational program" for the new career he sought as a adviser or consultant. (Am.Compl.¶ 49) Chira alleges that Columbia deprived him of the benefit of the bargain in that the MARSEA program was not yet fully accredited by the relevant state and federal authorities,[9] was significantly deficient as to courses and language training, and was taught by doctoral candidates rather than professors. (Am.Compl.¶ 50) He also complains that the program did not provide an academic advisor and that the criteria for the degree had not been definitively approved and were constantly in flux. (Am.Compl.¶ 50) For example, Columbia apparently imposed a requirement of a thesis and did so belatedly but refused to allow him to enroll for a second year at Harvard where there were the appropriate resources to complete such a thesis. Chira alleges that Columbia repudiated the contract in several respects—such as misleading plaintiff about the program and its requirements, by misleading him about the time required to complete the degree and imposing unrealistic and inconsistent time-frames and changing the criteria for the program. (Am.Compl.¶ 51) He also claims that he was denied access to the deans of the Graduate School of Arts and Sciences, and that Columbia breached its contract by arbitrarily withholding his academic transcripts and for failing to make reasonable accommodations as required by Title III of the ADA and section 504 of the Rehabilitation Act. (Am.Compl.¶ 51) Finally, he claims that Columbia breached its contract to provide suitable housing.

With respect to damages he allegedly suffered as a result of these breaches and repudiations, he claims that he "suffered a devastating material failure of contract consideration" and "has expended thousands upon thousands of dollars and incurred loans only to be deprived of a fair opportunity to pursue and make a livelihood in [my] second career." (Am. Compl.¶ 52) He seeks full restitution of the monies he paid and full restitution to New York and the federal government for the monies paid. He also seeks unspecified contract damages. (Am.Compl.¶ 53) Chira's sixth cause of action, which is for monies had and received, and his seventh cause of action, which is for misrepresentation, are based on these same facts. Chira contends that Columbia made numerous misrepresentations about the MARSEA program "deliberately, recklessly, cavalierly to hype, to promote and to induce [Chira] into the MARSEA program" and that he also alleges that he reasonably relied on these misrepresentations—that is, if he had known the true circumstances of the program he would not have enrolled. (Am.Compl.¶¶ 58–59) On his claim for monies had and received, he seeks "the cancellation of any direct loans (if any) from defendant" in addition to the restitution he seeks for himself and the state and federal governments in his breach-of-contract claim. (Am.Compl.¶ 55) For his misrepresentation claim, he seeks compensatory damages, including damages for emotional distress, and exemplary damages and equitable relief. (Am.Compl.¶¶ 61–62)

Chira's eighth cause of action is for "educational discrimination" under Title II of

9. In its motion to dismiss, Columbia submitted the invitation sent by the Graduate School of Arts and Sciences to Chira on May 29, 1998 in which Dean Eduardo R. Macagno states that "This new program has been approved provisionally by Columbia University and we expect final approval within the next few months." (Terrien–Somerville Aff. Ex. C)

the ADA. The essence of this claim is that Columbia denied him admission to a Masters in International Affairs at the School of International and Public Affairs based upon "age discrimination viewed as a *disability* in violation of Title II and related civil rights Federal and state laws." (Am. Compl. ¶ 64 (emphasis in original)) He further contends that Columbia steered him to the MARSEA program to be a guinea pig for this fledgling program and away from the "well-established, more suitable and advantageous MIA Degree." (Am. Compl. ¶ 64)

## II. DISCUSSION

█ Columbia moves to dismiss each of the eight claims in Chira's amended complaint on various grounds, including failure to state a claim under Rule 12(b)(6), the statute of limitations, and failure to exhaust remedies under the Americans with Disabilities Act. Defendants also move to dismiss the entire amended complaint for late service under Rule 4(m). On this motion to dismiss for failure to state a claim, the Court accepts as true all well-pled factual allegations and draws all reasonable inferences in favor of the plaintiff. *Leeds v. Meltz*, 85 F.3d 51, 52 (2d Cir. 1996). Dismissal of the complaint is appropriate only when it appears that the plaintiff cannot prove a set of facts "in support of his claim which would entitle him to relief." *Gant v. Wallingford Board of Education*, 69 F.3d 669, 673 (2d Cir. 1995). Although Chira proceeds *pro se* here, he is an experienced attorney and accordingly the Court is not obligated to

read his pleadings liberally. *See Goel v. United States DOJ*, No. 03 Civ. 0579(HB), 2003 WL 22047877, at *1 (S.D.N.Y. Aug. 27, 2003) (noting that an attorney licensed to practice law in another state and whose web site suggest that he is a seasoned attorney is not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001) ("While we are generally obliged to construe *pro se* pleadings liberally, we decline to do so here because Smith is a licensed attorney." (citations omitted)).

█ In deciding a motion to dismiss under 12(b)(6), the court can consider the complaint and any documents attached as exhibits or any statements or documents incorporated by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991); Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)).

### A. Time–Bar [10]

█ Columbia contends that Chira's claims for nuisance, negligence, strict lia-

---

10. Because Chira's claims are time-barred, it is not necessary to reach Columbia's argument with respect to untimely service of process in violation of Federal Rule of Civil Procedure 4(m), which requires a plaintiff to serve the summons and complaint on the defendant within 120 days of the filing of the complaint. Given the seeming dearth of case law on an issue that must arise occasionally, I briefly set out how I would have resolved this issue if it were necessary to do so. As background, there is a standing order within the Southern District that directs all *pro so* litigants to file their complaints with the Pro Se Office. Because the Pro Se Office reviews these submissions for various matters, occasionally, there is a delay between when the Pro Se Office receives a complaint and when

bility, failure to make reasonable accommodations for medical conditions, and age discrimination (claims 1, 2, 3, 4 and 8) are time-barred. According to Columbia, these five claims, which all have three-year statutes of limitations, must be dismissed because they were brought on February 5, 2003, more than three years from when Chira moved out of his housing at Columbia and thus more than three years after any claim accrued. Alternatively, Columbia contends that even if the relevant date is the date Chira filed with the Pro Se Office, the statute of limitations started to run more than three years before January 16, 2003. Chira contends that because his tort claims are closely related to a claim for a breach of the implied warranty of habitability he should have the benefit of the six-year limitations period for contract actions.[11] He cites no authority for this

proposition, which is contrary to case law. *See, e.g., Joyner v. Durant,* 277 A.D.2d 1014, 716 N.Y.S.2d 221, 222 (4th Dep't 2000) ("Plaintiff may not rely upon any alleged breach of the warranty of habitability to recover damages for personal injuries."); *Carpenter v. Smith,* 191 A.D.2d 1036, 595 N.Y.S.2d 710 (4th Dep't 1993) ("Real Property Law § 235–b does not create a new cause of action in strict tort liability that permits a tenant to recover damages for personal injuries resulting from a breach of that warranty."). He also contends that dismissal is inappropriate because there are fact issues as to when the causes of action accrued—i.e., when he knew or reasonably should have known of an actionable personal injury— because he alleges that he did not know the full extent of his injuries until after he moved out of this apartment.[12]

that complaint is transmitted to the Clerk of the Court for filing. Because a plaintiff is unable to proceed with the case, including serving process, until the summons is issued by the Clerk, I believe the date that is *relevant for Rule 4(m)* is the date that the complaint is filed by the Clerk and a summons is issued, even though the date that he submitted his complaint to the Pro Se Office is the relevant date for *purposes of the statute of limitations.* *Cf. Romand v. Zimmerman,* 881 F.Supp. 806, 810 (N.D.N.Y.1995) (denying a Rule 4(m) motion to dismiss where the plaintiff served the summons within 120 days of the denial of an application to proceed *in forma pauperis* but more than 120 days from when the complaint was originally presented to the court). Apparently, the Pro Se Office also takes this position and advises *pro se* litigants that the relevant date for service of process under Rule 4(m) is the date that the summons is issued, not the date it is received by the Pro Se Office. Thus, although service of process was made 137 days from the date the Pro Se Office received the complaint, Chira served the defendant 117 days from when the complaint was filed with the Clerk of the Court and thus did not violate Rule 4(m).

11. For example, Chira contends that "Where causes from the same nexus of acts (the conditions surrounding the apartment) sound in

contract and in tort, *plaintiff should be entitled to the benefit of the longer six (6) year (borrowed) New York Statute of Limitations.*" (Pro Se Plaintiff's Mem. of Law in Opposition to Defendant's Motion to Dismiss 3 (emphasis in original))

12. Chira's claims for nuisance and negligence are for personal injury and are thus governed by N.Y. C.P.L.R. § 214(5), which requires that an action to recover damages for a personal injury must be commenced within three years. "Even where a federal court borrows a state statute of limitations, 'federal law governs the question of when a federal claim accrues.' Under federal law, a cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.'" *M.D. v. Southington Bd. of Educ.,* 334 F.3d 217, 221 (2d Cir.2003) (quoting *Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir.1993)). His claim for strict liability also has a three-year statute of limitations based on the date of discovery, pursuant to N.Y. C.P.L.R. § 214c(2), which provides:

Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the

■ As an initial matter, the date that Chira filed his complaint with the Pro Se Office, not the date that the matter was received by the Clerk of the Court, is the relevant date for purposes of determining whether his claims are time-barred. *See Kramer v. United Federation of Teachers*, 2003 WL 21180413, at *1 (S.D.N.Y. May 20, 2003) ("Our Court deems a *pro se* complaint to be filed on the day it is received by the Court's Pro Se Office."); *see also Rumph v. New York City Transit Authority*, 2002 WL 1334797, at *1 (S.D.N.Y. June 13, 2002) ("Rumph's complaint was filed with the Pro Se Office on January 2, 2002, though not docketed until February 26, 2001. Because the earlier date controls, the complaint is deemed timely filed."); *Johnson v. Nat'l Football League*, 1999 WL 892938, at *2 (S.D.N.Y. Oct. 18, 1999). Thus, any of Chira's claims with a three-year statute of limitations are time-barred if they accrued earlier than January 16, 2000.

### 1. Tort claims

■ Chira does not place dates on any of Columbia's acts or omissions that give rise to his tort claims, although it is clear that these conditions occurred while he was enrolled in the program in the 1998–1999 academic year. For example, he alleges that he was forced to leave his apartment to study due to the nuisance and that he underwent various medical treatments for his injuries. Although it is clear on the face of the complaint that his causes of action based on these allegations accrued as early as some time in 1998 or 1999 and that Columbia's alleged torts caused Chira injuries long before he moved out of the apartment in January 2000, Chira con-

tends that because of "medical uncertainties in diagnosis and treatment" he did not and could not have known the specific actionable injury giving rise to his claims until after January 2000. However, that some injuries did not manifest themselves until later or that the full extent of his damages were not known does not change the fact that his cause of action accrued earlier. *See Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847, 660 N.Y.S.2d 862, 683 N.E.2d 768 (1997) ("Neither plaintiff's contention that his symptoms worsened and changed in 1991 nor the diagnosis of a doctor he first visited in September 1991 that substances other than the coolant caused his injury makes his claim timely. All that is necessary to start the limitations period is that plaintiff be aware of the primary condition for which damages are sought.").

### 2. Discrimination claims

■ Columbia contends that the three-year statute of limitations for personal injury is also applicable to Chira's claims that Columbia's refusal to make reasonable accommodations with respect to his housing or his education. *See Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999) (noting that the statute of limitations for Rehabilitation Act claims is the same as for § 1983 claims, which in New York is three years); *Morse v. University of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992) ("[W]e now hold that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions."). It is clear from the complaint that any allegedly unlawful conduct by Columbia in fail-

latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.
N.Y. C.P.L.R. § 214–c(2).

ing to make a reasonable accommodation with respect to housing or with respect to his enrollment in classes for his disabilities occurred in 1998 or 1999 when he was a student—well before January 16, 2000, which was about two weeks after his extended lease expired and about two weeks before he eventually vacated the premises.

■ Similarly, his eighth cause of action—his claim for educational discrimination—is based on Columbia's rejection of his application to Columbia's prestigious School of International and Public Affairs. Because he was rejected at SIPA before he enrolled at MARSEA, which was in September 1998, the allegedly discriminatory conduct occurred at least four and a half years before this lawsuit. Therefore, his eighth claim is well beyond the statute of limitations and is dismissed.

## B. Failure to State A Claim

■ Columbia contends that Chira's fifth, sixth, and seventh causes of action are challenges to academic determinations, which are generally brought in an Article 78 proceeding for which there is a four-month statute of limitations and for which courts accord considerable deference. *See Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999) ("Courts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities. 'In these so-called "university" cases, CPLR article 78 proceedings are the appropriate vehicle because they ensure that the over-all integrity of the educational institution is maintained and, therefore, protect more than just the individual's right to employment.' ") (citations omitted)). Chira disputes this characterization and maintains that these allegations properly sound in contract and are thus timely; he argues that his claims are with respect to *administrative* rather than *academic* decisions and as such are well within the competence of courts.

As Chira notes, courts in this district recognize that the student-college relationship gives rise to a contractual relationship.[13] Moreover, if his allegations support a claim for breach of contract, then the applicable statute of limitations is six years rather than four months. *See Ward*, 2000 WL 1448641, at *7 ("Article 78 proceedings are not the proper vehicle for enforcing private contractual rights. Here, Ward does not seek to compel or prohibit any action by defendants, but instead seeks to recover monetary damages for injuries allegedly resulting from defendants' breach of the implied contract between the parties. Accordingly, the statute of limitations for Article 78 proceedings is not applicable here and the six year limitations period for breach of contract claims governs."). However, although he states there was a contract, he points to no document or conversation that gives rise to a promise which Columbia breached. The failure to identify the specific contract that Columbia allegedly breached makes it very difficult to properly characterize the nature of his allegations—*i.e.*, as challenges to determinations

13. *Ward v. New York Univ.*, No. 99 Civ. 8733(RCC), 2000 WL 1448641, at *3 (S.D.N.Y. Sept. 25, 2000) ("Courts in this jurisdiction have acknowledged that a student can sue a school for breach of contract. When a student enrolls at a university, an implied contract arises whereby, if the student complies with the conditions prescribed by the university, he or she will obtain the degree she is pursuing." (citations omitted)); *see also Mostaghim v. Fashion Inst. of Tech.*, No. 01 Civ. 8090(HB), 2002 WL 1339098, at *6 (S.D.N.Y. June 18, 2002) (finding that a college's Rights and Responsibilities Manual supported a claim for breach of contract), *aff'd*, 57 Fed. Appx. 497, 2003 WL 1191172 (2d Cir.2003).

within the wide discretion of the university or as a genuine breach of a contract. More significantly, this deficiency in his pleadings is fatal to his breach-of-contract claim. *See Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 207 (S.D.N.Y.1998) ("Indeed, the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted. The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student."); *Ward*, 2000 WL 1448641, at *3 ("[B]ald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim."); *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999) ("When a complaint merely 'recites a litany of academic and administrative grievances couched in terms of a violation of a contractual right to tenure' and is devoid of any reference to the contractual basis for the rights asserted, academic prerogatives should not be channeled into a cognizable contract action classification."); *Baldridge v. State*, 293 A.D.2d 941, 740 N.Y.S.2d 723, 725 (3d Dep't 2002) ("[W]hile a school may be subject to a cause of action for breach of contract, this requires a contract which provides for 'certain specified services' as 'courts have quite properly exercised the utmost restraint applying traditional legal rules to disputes within the academic community' ").

Without any reference to a specific contract, his claims appear much less like contract claims and much more like academic determinations that Chira should have brought in an Article 78 proceeding. To the extent that he claims Columbia failed to provide "a comprehensive, suitable educational program" for his new career by not providing him a faculty advisor and by permitting courses to be taught by doctoral candidates, it appears that this claim relates to decisions with respect to how to structure its academic program.[14] Similarly, his challenges to Columbia's determination to include a requirement of thesis and its decision to not allow him to complete his coursework at Harvard are, notwithstanding his assertions to the contrary, academic decisions within the broad discretion of universities. *Babiker v. Ross University School of Medicine*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000) ("Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious."). *Ward*, 2000 WL 1448641, at *3 ("Educational institutions are afforded considerable deference when making decisions concerning academic standards."). Accordingly, Chira's three causes of action which arise from his allegations about his academic treatment—i.e., breach of contract, monies had and received, and misrepresentation—are dismissed.

Chira has requested leave to replead any claims that are found to be deficient. Although leave to amend should be "freely

---

14. These allegations also appear to be for educational malpractice, which N.Y. courts do not recognize. *See Hoffman v. Board of Education*, 49 N.Y.2d 121, 125, 424 N.Y.S.2d 376, 400 N.E.2d 317 (1979) ("[A] cause of action, although quite possibly cognizable under traditional notions of tort law, should not, as a matter of public policy, be entertained by the courts of this State."); *Gally v. Columbia* *Univ.*, 22 F.Supp.2d 199, 206–07 (S.D.N.Y. 1998) ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.' ").

given when justice so requires," *see* Fed. R.Civ.P. 15(a), leave to amend need not be granted if amendment would be futile. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995). Although Chira's claim for breach of contract, the one claim that is not time-barred, appears doubtful, justice requires that Chira be afforded the opportunity to dispel such doubts. *Cf. Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Chira shall have 30 days within which to amend his pleadings. Should this amended pleading be sufficient, new timetables will be set and for now the pre-trial scheduling order is held in abeyance.

### III. CONCLUSION

For the above stated reasons, the motion to dismiss is granted. Plaintiff shall have 30 days to amend his pleading.

**IT IS SO ORDERED.**