David BLIVEN, Plaintiff,

v.

Hon. John HUNT, both in his individual and official capacity; Hon. Barbara Salinitro, both in her individual and official capacity; Hon. Guy Dephillips, both in his individual and official capacity; Douglas Foreman, both in his individual and official capacity; Julie Stanton, both in her individual and official capacity; Cheryl Joseph–Cherry, both in her individual and official capacity; Hon. Joseph Lauria, both in his individual and official capacity; City of New York; and "John Does," 1–10, both in their individual and official capacities, the identity and number of whom is presently unknown to the plaintiff, Defendants.

No. 05–CV–4852 (SJF)(LB).

United States District Court, E.D. New York.

Feb. 9, 2007.

David Bliven, Jamaica, NY, pro se.

Monica Anne Connell, Office of the New York State Attorney General, Duncan Archie Peterson, New York City Law Department, Office of the Corporation Counsel, Martha Anne Calhoun, New York City Department of Law, New York, NY, for Defendants.

**OPINION AND ORDER**

FEUERSTEIN, District Judge.

I. Introduction

On October 17, 2005, *pro se* plaintiff David Bliven ("Plaintiff" or "Bliven"), an attorney admitted to practice in the State of New York, commenced this action pursuant to, *inter alia,* 42 U.S.C. §§ 1983 and 1985. Defendant City of New York ("Defendant" or "the City") now moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is granted.

II. Plaintiff's Pleadings

 Although Plaintiff proceeds *pro se* he is an experienced attorney and accordingly his pleading is not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs. *Chira v. Columbia University in New York City,* 289 F.Supp.2d 477, 482 (S.D.N.Y.2003) (citing *Goel v. United States DOJ,* No. 03 Civ. 0579, 2003 WL 22047877, at *1 (S.D.N.Y. Aug. 27, 2003)); *Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir.2001) ("While we are generally

obliged to construe *pro se* pleadings liberally, we decline to do so here because Smith is a licensed attorney.") (citations omitted). *See also Goktepe v. Lawrence,* No. 03 Civ. 89, 2005 WL 293491, at * 1 (D.Conn. Jan. 26, 2005) (holding that pleadings of licensed attorney proceeding *pro se* are not construed using liberal standard typically afforded *pro se* litigants).

## III. Background

### A. Facts

Bliven was appointed to the New York City Public Defender Panel in 2000. Complaint at ¶ 13. He has worked primarily as a public defender in Queens County Family Court. *Id.*

According to Bliven, at the termination of a case in Queens Family Court, the public defender submits a voucher issued by either the Assigned Counsel Panel or the Law Guardian Program, Appellate Division, Second Department to the judge who presided over the case, itemizing the number of hours he or she has invested on the case. *Id.* at ¶ 16. The vouchers are reviewed by the judge's court attorney, signed by the judge, and then returned to the public defender. *Id.* at ¶¶ 17–18. The public defender then submits the signed form to the City of New York and/or the State of New York for payment. *Id.* Within four (4) to five (5) weeks of submission, the public defender receives payment. *Id.*

Prior to January 2004, public defenders were compensated at a rate of twenty-five dollars ($25.00) per hour for out-of-court work and forty dollars ($40.00) per hour for in court appearances. *Id.* at ¶ 19. Effective January 1, 2004, all public defender work is compensated at a rate of seventy-five dollars ($75.00) per hour. *Id.*

Family Court judges have discretion to determine whether a public defender is entitled to the compensation sought and authority to provide excess compensation in "extraordinary circumstances." Administrative Judge Joseph Lauria reviews vouchers in instances where a public defender alleges that a Family Court judge abused his or her discretion in reducing the amount of compensation that a public defender seeks. *Id.* at ¶ 21.

Bliven alleges that in 2001 he filed motions to compel disclosure of the case records from the Administration for Children Services ("ACS") in fifteen (15) cases. According to Bliven, while the motions were neither "frivolous [n]or inappropriate," they were "out of the norm" because public defenders usually accept "whatever portions of the case record" are provided by ACS. *Id.* at ¶¶ 22–23. Bliven claims that the ACS staff attorneys complained to their supervising attorneys, "who in turn complained to the Office of the Commissioner of ACS." *Id.* at ¶ 24. According to Bliven, following the ACS complaints, Judges John Hunt and Barbara Salinitro began reducing his compensation without explanation. *Id.* Bliven contends that the reduction in compensation was based on his filing of the motions on behalf of his clients.

Bliven alleges that although his practice of filing motions was raised during his review for recertification on the public defender panel, *id.* at ¶¶ 24–26, he was recertified as a public defender. *Id.* at ¶ 26.

Bliven's vouchers continued to be reduced by Judges Hunt and Salinitro between March 2002 and July 2004. *Id.* at ¶¶ 27, 30, 32, 34. He alleges that Judge Lauria conspired with Judges Hunt and Salinitro to reduce his compensation. *Id.* at ¶¶ 33, 35. Bliven also alleges that a voucher submitted to the supervising Judge of the Queen's Family Court, Judge Guy DePhillips, was reduced in March 2005. *Id.* at ¶¶ 36–37.

Bliven claims that on three (3) public defender cases which ended between 2004 and 2005, his vouchers were reduced to the rates in effect prior to January 1, 2004. *Id.* at ¶ 38.

## B. Procedural History

On December 2, 2005, I dismissed *sua sponte* the claims asserted against the individual defendants (including John Does 1–10) on the ground that, as judges and related staff, they possessed absolute immunity from all of Plaintiff's claims. *See Bliven v. Hunt,* 418 F.Supp.2d 135 (E.D.N.Y.2005). Plaintiff moved for leave to amend his complaint on January 10, 2006. On June 7, 2006, Magistrate Judge Lois Bloom issued a Report and Recommendation that recommended that Plaintiff's motion for leave to amend be denied on the ground that amendment would be futile. Magistrate Judge Bloom also stated that "[a]s plaintiff's federal claims should all be dismissed, I further recommend that the Court should decline to extend supplemental jurisdiction over plaintiff's breach of contract claim against the municipal defendant." Report at 18. On June 30, 2006, I adopted the portion of Magistrate Judge Bloom's Report recommending denial of Plaintiff's motion for leave to amend but declined to adopt the portion of the Report recommending dismissal of Plaintiff's federal claim against Defendant because Defendant failed to move for dismissal of that claim.[1] I also declined to adopt the portion of the Report recommending against exercising supplemental jurisdiction over Plaintiff's state law claim against Defendant.

## IV. Standard of Review

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) should be granted where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101 (2d Cir.2003) (internal citation omitted). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

## V. Analysis

■■■ A municipality or municipal entity cannot be held liable under Section 1983 on a *respondeat superior* theory. *See Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Linder v. City of New York,* 263 F.Supp.2d 585, 591 (E.D.N.Y.2003). However, a municipal entity may be liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] ... [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

■■■ To establish the existence of a municipal policy or custom, a plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made

---

**1.** I expressed no view on the merits of that claim.

by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996). *See also Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 478 (E.D.N.Y.2002). Although a single act of a city official "whose acts or edicts may fairly be said to represent official policy" may give rise to municipal liability under Section 1983, *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, a municipality will only be liable under Section 1983, where a city official "responsible for establishing final policy with respect to the subject matter in question" makes a deliberate choice among competing alternatives that results in the violation of constitutional rights. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

**A. Specific Actions of Officials with Final Policymaking Authority.**

■ Plaintiff alleges damages as a result of the alleged conduct of Family Court judges, court attorneys, and ACS attorneys.

■ Plaintiff concedes that Family Court judges are paid by the State of New York and are State employees. Nevertheless, Plaintiff argues that the judges are simultaneously municipal policymakers, thereby subjecting Defendant to liability under *Monell.* The Second Circuit has not addressed the policymaking authority of judges; however, other circuits have determined that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a Section 1983 claim based solely on the actions of its judges.[2] Whether an official has final policymaking authority is a question to be decided by the court. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). The determination is "dependent on the definition of the official's functions under relevant state law." *McMillian v. Monroe County, Alabama,* 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). "[T]he relevant legal materials, includ[e] state and local positive law, as well as custom or usage having the force of law." *Jett,* 491 U.S. at 737, 109 S.Ct. 2702 (internal quotation marks omitted).

■ Queens County Family Court is "part of the unified court system for the

**2.** *See, e.g., Granda v. City of St. Louis,* 472 F.3d 565 (8th Cir.2007) (holding city not liable for municipal judge's decision to incarcerate a mother for her daughter's truancy); *Ledbetter v. City of Topeka, Kansas,* 318 F.3d 1183, 1190 (10th Cir.2003) (finding no municipal liability under *Monell* when a judge's clerk issued warrants the judge himself did not personally review using the judge's rubber stamp because it was not done under the auspices of the city and could not be interpreted as promulgating city policy); *Eggar v. City of Livingston,* 40 F.3d 312, 316 (9th Cir. 1994) (holding that judge's failure to inform indigent defendants of their right to counsel did not amount to municipal policymaking); *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992) (holding that a judge acting in his judicial capacity is not acting as a municipal official or lawmaker); *Woods v. City of Michigan City,* 940 F.2d 275, 279 (7th Cir.1991) (holding that judge was acting as part of state judicial system but not as an official policymaker). *Cf. Williams v. Butler,* 863 F.2d 1398, 1402 (8th Cir.1988) (holding a city liable for the unconstitutional firing of two (2) clerks by a municipal judge when it was clear the city had delegated to him final administrative authority over employment matters).

state." The Family Court Act § 113 (McKinney 1999). The authority of the Family Court judges is established by state law. *See generally* The Family Court Act. Article 18–B of the New York County Law requires counties to provide legal counsel to individuals who are statutorily entitled to representation. County Law § 722 (McKinney 2004). The base rate of compensation is fixed by statute but Family Court judges are ultimately responsible for determining the amount of compensation and reimbursement for services rendered by a public defender. County Law § 772–b states in relevant part:

> For representation on an appeal, compensation and reimbursement shall be fixed by the appellate court. For all other representation, compensation shall be fixed by the trial court judge. In extraordinary circumstances a trial or appellate court may provide for compensation in excess of the foregoing limits and for payment of compensation and reimbursement for expenses before the completion of the representation.

Pursuant to Rule 127.2(b) of the Rules of the Chief Administrator of the Courts, administrative judges have the power to modify an award "if it is found that the award reflects an abuse of discretion by the trial judge." 22 N.Y.C.R.R. 127.2(b) (McKinney 2003). Further, the Rule states that "[a]ny order modifying a trial judge's award shall be in writing." *Id.* A decision of an administrative judge is subject to review by an Article 78 proceeding. *Kraham v. Mathews*, 305 A.D.2d 746, 761 N.Y.S.2d 102, 105 (App.Div. 3rd Dep't. 2003), *lv. denied* 100 N.Y.2d 512, 767 N.Y.S.2d 393, 799 N.E.2d 616 (2003).

■ The New York Court of Appeals has characterized the award of compensation by a judicial officer as an administrative act. *See Levenson v. Lippman*, 4 N.Y.3d 280, 291, 794 N.Y.S.2d 276, 827 N.E.2d 259 (2005). However, the fact that an act is administrative does not mean that it is a policymaking decision on behalf of Defendant. Determinations of attorney compensation do not establish municipal policy, but only effectuate the statutory policy established by the State legislature to compensate appointed counsel. *See Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992). The determination of the amount of compensation has been delegated to judges because "it has long been recognized that Trial Judges, who are intimately familiar with the intricacies of the cases before them and of individual circumstances in which the services were rendered in those cases, are in the best position to make such determinations." *State v. Brisman*, 173 Misc.2d 573, 661 N.Y.S.2d 422, 431 (N.Y.Sup.Ct.1996) (citations omitted).

Further, Defendant cannot be held liable for the judges' administrative actions because it does not have the power to review or remedy these acts. Family Court judges' decisions regarding compensation are appealable to the administrative judge whose rulings are, in turn, reviewable in an Article 78 proceeding. *See Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir.1994) ("A municipality cannot be liable for judicial conduct it lacks the power to require, control or remedy, even if that conduct parallels or appears entangled with the desires of the municipality."). Therefore, determinations of compensation by Family Court judges and the administrative judge are not final policymaking decisions creating municipal liability under Section 1983.

Additionally, because the Queens County Family Court is a state entity, *see* The Family Court Act § 113, the judges' actions cannot be considered "of the municipality" for the purpose of municipal liabili-

ty. While judges are appointed by the Mayor of the City of New York, *see id.* at § 121, pursuant to the New York State Constitution, the City does not have authority to remove Family Court judges. Judges can only be removed from office by the Chief Judge of the New York Court of Appeals upon recommendation of the state commission of judicial conduct or by the New York State Senate, on the recommendation of the governor. McKinney's Const. Art. 6, §§ 22–23. *See Rodriguez v. City of New York,* No. 02 Civ. 8203, 2004 WL 444089, at *4 (S.D.N.Y. March 4, 2004) (criminal court judge is an employee of the State, not the City; therefore "even if the judge's actions had amounted to that of a policymaker, the City would not be liable under *Monell.*").

Court attorneys are also employees of the State and insofar as they assist the judges in making determinations of compensation, their decisions are not policy-making.

Plaintiff also asserts damages as a result of the conduct of ACS attorneys and an unnamed supervisory attorney who allegedly stated, in early 2002, that [ASC was going to] "f—— Bliven." Complaint at ¶ 24. While these individuals are employees of Defendant, Plaintiff does not allege their participation in the reduction of his vouchers apart from the judges' actions.

Finally, contrary to Plaintiff's contention, the fact that vouchers are ultimately paid by the City's Comptroller does not alter the outcome since City employees merely process the vouchers as endorsed by the judges.

#### B. Failure to Train and Supervise

 Insofar as Plaintiff attempts to allege a failure to train and supervise

claim, the claim is dismissed. Complaint at ¶¶ 83–84. To sustain a claim under *Monell,* a municipality's failure to train and supervise its employees must amount to "deliberate indifference to the constitutional rights of [its] citizens." *Walker,* 974 F.2d at 297. In *Walker,* the Second Circuit set out three (3) criteria for meeting this standard:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation.... Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation.... Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* at 297–98 (citations and internal quotation marks omitted).

 Plaintiff, in essence, alleges that lack of training and supervision played some part in the reduction of his vouchers. However, the "simple recitation that there was a failure to train municipal employees," does not sufficiently allege a claim that would give rise to municipal liability. *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). Plaintiff's complaint recites lengthy allegations against particular individuals but lacks sufficient allegations from which the Court can infer that Defendant failed to train and supervise its employees. Finding a municipality liable on a lack of training and supervision theory requires a showing that the *municipality* was deliberately indifferent, not that the individual actors acted with deliberate indifference. Plaintiff's scant allegations,

340

even if proved, would not support a finding of deliberate indifference.

Further, as mentioned above, both Family Court judges and their court attorneys are not municipal employees; they are State employees. Defendant does not train or supervise these employees and therefore, cannot be held liable for any alleged failure to train and supervise.

### C. Other Claims

To the extent Plaintiff's opposition papers include new allegations and accompanying arguments that were not included in his original Complaint filed on October 17, 2005, the Court declines to consider these arguments. Further, the federal claims having been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.

### VI. Conclusion

For the reasons set forth above, Defendant's motion to dismiss the complaint is GRANTED. The action is dismissed. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.