07-1146-cv
Bliven v. Hunt

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2008

(Argued:  October 22, 2008
Final briefs submitted
November 7, 2008                 Decided: August 28, 2009)

Docket No. 07-1146-cv

_____

DAVID BLIVEN,

                                    Plaintiff-Appellant,

                        - v. -

HON. JOHN HUNT, both in his individual and official capacity, HON. BARBARA SALINITRO, both in her individual and official capacity, HON. GUY DePHILLIPS, both in his individual and official capacity, DOUGLAS FOREMAN, both in his individual and official capacity, JULIE STANTON, both in her individual and official capacity, CHERYL JOSEPH-CHERRY, both in her individual and official capacity, HON. JOSEPH LAURIA, both in his individual and official capacity, and CITY OF NEW YORK,

                                    Defendants-Appellees,

"JOHN DOES," 1-10, both in their individual and official capacities, the identity and number of whom is presently unknown to the plaintiff,

                                    Defendants.

_____

Before:   KEARSE, SACK, and KATZMANN, Circuit Judges.

        Appeal from a judgment of the United States District Court for the Eastern District of New York, Sandra J. Feuerstein, Judge, dismissing, on grounds of judicial immunity and failure to

state a claim, complaint alleging denial of due process and breach of contract because of payments to plaintiff of less than the amounts of compensation he requested as a public defender.

Affirmed.

DAVID BLIVEN, White Plains, New York, Plaintiff-Appellant pro se.

DIANA R.H. WINTERS, Assistant Solicitor General, New York, New York (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Michael S. Belohlavek, Senior Counsel, New York, New York, on the brief), for Individual Defendants-Appellees.

SUSAN CHOI-HAUSMAN, Senior Counsel, New York, New York (Michael A. Cardozo, Corporation Counsel of the City of New York, Pamela Seider Dolgow, Duncan Peterson, New York, New York, on the brief), for Defendant-Appellee City of New York.

KEARSE, Circuit Judge:

Plaintiff pro se David Bliven, an attorney who was a member of the public defender panel in New York City, appeals from a judgment entered in the United States District Court for the Eastern District of New York, Sandra J. Feuerstein, Judge, dismissing his action, brought principally under 42 U.S.C. § 1983, alleging that the individual defendants--judges and staff attorneys in the New York State ("State") court system--and the City of New York (the "City") denied him due process by granting him compensation in less than the amount he requested for services

- 2 -

he performed as court-appointed counsel, and alleging breach of contract by the City. The district court dismissed the complaint against the individual defendants as frivolous on its face in light of those defendants' entitlement to judicial immunity. It dismissed the federal claims against the City pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Bliven challenges these rulings on appeal, contending principally (a) that the individual defendants are not entitled to judicial immunity because they were acting in their administrative, not judicial, capacities, and (b) that the City is liable because the individual defendants, in setting his compensation, were municipal policymakers. Finding no merit in Bliven's challenges, we affirm.

## I. BACKGROUND

The following description of the events is drawn from Bliven's complaint, whose factual allegations we take as true for purposes of reviewing the dismissal pursuant to Rule 12(b)(6).

### A. Bliven's Claims

From 2000 until April 2005, Bliven was a member of New York City's Assigned Counsel Panel, serving as a public defender principally in New York Family Court in Queens County. He was assigned cases in that court by individual family court judges and represented children, as their "law guardian," or adults in cases

- 3 -

involving child custody and support, family offenses, juvenile delinquency, and children in need of protection.

Defendants John Hunt, Barbara Salinitro, and Guy DePhillips were judges on the family court; Judge DePhillips was the supervising judge; defendant Joseph Lauria was a State Administrative Judge. Defendants Douglas Foreman, Julie Stanton, and Cheryl Joseph-Cherry were, respectively, staff attorneys for Judges Hunt, Salinitro, and DePhillips.

Under the assigned-counsel plan, established pursuant to State law, see N.Y. County Law art. 18-B ("Article 18-B"), §§ 722 and 722-a to 722-f, a municipality is required to compensate attorneys assigned pursuant to Article 18-B at statutory rates-- set as of January 2004 at $75 per hour for offenses above the misdemeanor level--"for time expended in court before a magistrate, judge or justice and . . . for time reasonably expended out of court," N.Y. County Law § 722-b(1), up to a maximum total of $4,400, see id. § 722-b(2), plus "reimbursement for expenses reasonably incurred," id. § 722-b(1). The attorney's compensation and reimbursement in a given case are to be "fixed by the trial court judge," who, in "extraordinary circumstances . . . may provide for compensation in excess of the [statutory] limits." Id. § 722-b(3). Regulations provide that "[r]equests for reconsideration of any order of the trial court fixing compensation" may be "reviewed by the appropriate administrative judge, . . . who may modify the award if it is found that the

award reflects an abuse of discretion by the trial judge." N.Y. Comp. Codes R. & Regs. tit. 22, §§ 127.3(c), 127.2(b).

Bliven commenced the present action in 2005, alleging principally that, beginning in March 2002, the individual defendants conspired to deny him the compensation to which he was entitled, in retaliation for his having made disfavored motions in approximately 15 child protective and foster care cases in 2001 to compel the disclosure of "the entire caserecord [sic]" (Complaint ¶ 22) maintained by the Administration for Children's Services ("ACS") (see, e.g., id. ¶¶ 22-32, 55). He alleged that between March and September 2002, "nearly every voucher [he] submitted for public defender compensation--at least regarding an ACS or foster care agency case--to Judges Hunt or Salinitro were [sic] reduced by $50-150, all with no oral or written explanation as to why the voucher was reduced" (id. ¶ 30), and that Foreman and Stanton told Bliven that his vouchers were reduced because of his filing of the motions to compel disclosure of complete ACS files (see id. ¶¶ 28, 31). Other vouchers submitted by Bliven were reduced by substantially greater amounts (see, e.g., id. ¶¶ 32, 34, 37); the total by which Bliven alleged he was underpaid was $16,637.39 (see id. ¶ 44).

Bliven also alleged that as a result of his complaining about the reductions of his vouchers, he was threatened that the judges would file a grievance against him. He alleged that he was thus forced to withdraw from the public defender panel, thereby losing two-thirds of his usual income. (See id. ¶¶ 46-47.)

- 5 -

The Complaint sought $16,637.39 from the City on a theory of breach of contract. (See id. ¶¶ 39-44.) In addition, it sought, inter alia, $5 million in compensatory damages from all of the defendants on each of seven causes of action on various theories, including hostile work environment (see id. ¶¶ 45-48), conspiracy to deprive Bliven of the compensation to which he was entitled (see id. ¶¶ 49-56), conspiracy to deprive him of equal protection and to deprive persons charged with child neglect and/or child abuse of effective assistance of counsel (see id. ¶¶ 57-61), denial of substantive and procedural due process (see id. ¶¶ 62-69), and failure of the City to train, investigate, and discipline the individual defendants (see id. ¶¶ 79-85). The complaint also sought $25 million on a "Class-Action-Right To Counsel" theory (id. ¶¶ 70-73), and sought injunctive relief (a) prohibiting the State and the City from requiring judicial approval of public defender vouchers, and (b) ordering that any such fee disputes instead be submitted to arbitration (see id., WHEREFORE ¶ D).

B. The Decisions of the District Court

In an Opinion and Order dated December 12, 2005, reported at 418 F. Supp. 2d 135, the district court dismissed the complaint against the individual defendants sua sponte. As to Bliven's claims for monetary relief, the court concluded that those defendants were "absolutely immune from liability for judicial acts" because Bliven "does not allege that the judges were acting

- 6 -

beyond their judicial capacity or in the clear absence of jurisdiction." Id. at 137-38.

The court also dismissed Bliven's claims for injunctive relief against the individual defendants. It concluded that any such relief was unavailable because "'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable,'" and Bliven had failed to allege that a declaratory decree was violated or that declaratory relief was unavailable. Id. at 139 (quoting Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983)).

In a subsequent unpublished Opinion and Order dated June 28, 2006, the district court denied a motion by Bliven to amend his complaint to add an allegation that the individual defendants, at the relevant times, were acting not in their judicial capacities but instead in their administrative and/or ministerial capacities. Accepting and adopting the report and recommendation of the magistrate judge to whom the motion had been referred, which reasoned that all of the actions complained of by Bliven and all of his contacts with the individual defendants had been in their judicial capacities, the district court concluded that Bliven's proposed amendment would be futile.

Finally, in an Opinion and Order dated February 9, 2007, reported at 478 F. Supp. 2d 332, the district court granted a

- 7 -

motion to dismiss the federal claims against the City for failure to state a claim. The court ruled that the individual defendants were not municipal policymakers because (a) they were employees of the State, not the City, see id. at 338-39, and (b) their "[d]eterminations of attorney compensation do not establish municipal policy, but only effectuate the statutory policy established by the State legislature to compensate appointed counsel," id. at 338. The court ruled that the complaint failed to state a claim for failure to train or supervise, etc., because the City was not responsible for training or supervising the individual defendants as they are employees of the State. See id. at 340. Having dismissed all of Bliven's federal claims, the court declined to exercise supplemental jurisdiction over his claim against the City for breach of contract.

## II. DISCUSSION

On appeal, Bliven contends that the district court erred when it ruled that the individual defendants are entitled to judicial immunity, arguing that the individual defendants' determinations of compensation for court-appointed attorneys are employment-related, administrative decisions for which judicial defendants are not afforded absolute immunity. (See Bliven brief on appeal at 14-15.) Bliven also challenges the dismissal of his federal claims against the City, pursuing his contention that the individual defendants act as "municipal policymaker[s] for

- 8 -

purposes of determining compensation for New York City public defenders." (Id. at 21.) For the reasons that follow, we find no merit in Bliven's contentions.

A. Judicial Immunity

It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. See, e.g., Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Forrester v. White, 484 U.S. 219, 225-26 (1988). Such judicial immunity is conferred in order to insure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871). Thus, even allegations of bad faith or malice cannot overcome judicial immunity. See, e.g., Pierson v. Ray, 386 U.S. 547, 554 (1967); Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir.), cert. denied, 522 U.S. 997 (1997). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judges are not, however, absolutely "immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Mireles, 502 U.S. at 11; see also Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005). In determining whether

- 9 -

an act by a judge is "judicial," thereby warranting absolute immunity, we are to take a functional approach, for such "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches," Forrester, 484 U.S. at 227 (emphasis in original). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978); see, e.g., Mireles, 502 U.S. at 12-13.

In employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature. Actions that are judicial in nature include issuing a search warrant, see Burns v. Reed, 500 U.S. 478, 492 (1991); directing court officers to bring a particular attorney before the judge for a judicial proceeding, see Mireles, 502 U.S. at 12-13; granting a petition for sterilization, see Stump, 435 U.S. at 362-64; and disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case, see Bradley, 80 U.S. (13 Wall.) at 354-57. The fact that a proceeding is "informal and ex parte . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." Forrester, 484 U.S. at 227; see, e.g., Stump, 435 U.S. at 363 n.12 (the fact "[t]hat

- 10 -

there were not two contending litigants did not make Judge Stump's act [in granting mother's petition for sterilization of her "'somewhat retarded'" daughter] any less judicial"). In Huminski v. Corsones, we concluded that a judge's orders prohibiting Huminski from appearing in or around state-court facilities were judicial acts because Huminski's conduct and communications, perceived as potentially threatening, were complaining of rulings in a criminal case in which he had been the defendant and over which the judge had presided. See 396 F.3d at 78.

In contrast, a judge's "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." Forrester, 484 U.S. at 228. Such administrative actions include demoting or dismissing a court employee, see id. at 229-30; and compiling general jury lists to affect all future trials, see Ex parte Virginia, 100 U.S. 339, 348 (1879). Similarly, judges are not entitled to judicial immunity for promulgating a code of conduct for attorneys, though for that function they have been held entitled to legislative immunity. See Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S. 719, 731, 734 (1980); see, e.g., id. at 731 (judges' "propounding the [State Bar] Code was not an act of adjudication but one of rulemaking" in their legislative capacity).

A private actor may be afforded the absolute immunity ordinarily accorded judges performing their authorized judicial functions if the private actor's role is "'functionally

- 11 -

comparable'" to the roles of those judges, Butz v. Economou, 438 U.S. 478, 513 (1978), or his acts are integrally related to an ongoing judicial proceeding, see, e.g., Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988) (judge's law clerk assisting the judge in making judicial decisions was entitled to judicial immunity for his participation in those functions); Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (federal probation officer preparing and furnishing presentence reports to the court was entitled to judicial immunity for that function); see generally Mitchell v. Fishbein, 377 F.3d 157, 172-74 (2d Cir. 2004). But private persons assisting judges are not accorded absolute immunity with respect to the performance of functions that are nonjudicial. See, e.g., id. at 174 (no such immunity for persons compiling lists of attorneys available to serve pursuant to Article 18-B in the future ("18-B Panels")).

Bliven, in contending that the family court judges' rulings on his vouchers were acts that were administrative rather than judicial in nature, relies heavily (see Bliven brief on appeal at 11, 16-20) on Mitchell v. Fishbein, in which we ruled that the screening committee ("Committee") responsible for compiling a list of attorneys to be members of an 18-B Panel performed functions that were administrative and legislative, rather than judicial. His reliance is misplaced. The principal hallmark of the judicial function is a decision in relation to a particular case. In Mitchell v. Fishbein, the Committee simply assembled the 18-B Panel, certifying, recertifying, and

decertifying attorneys who were willing and qualified to represent an indigent defendant charged with a crime, and who would, if appointed in the future, be entitled under Article 18-B to compensation for their services. The Committee did not determine which attorney would be appointed in any particular case; indeed, in any given case the court was free to appoint an attorney who was not on the 18-B Panel. Further, the Committee's decision not to recertify Mitchell affected only his entitlement to compensation for cases to which he might be appointed in the future; the refusal to recertify did not affect any particular case, as it did not remove Mitchell from any case he was then handling. See, e.g., 377 F.3d at 168-69, 172. Thus, although essential to the operation of the judicial system generally, the functions performed by the Committee were not integrally related to any specific judicial proceeding. We concluded that

> the Screening Committee, in compiling a list of qualified attorneys, acts as an administrative body, rather than conducting proceedings that are judicial, and . . . its denial of Mitchell's application for recertification to the 18-B Panel was a decision that was not judicial but legislative.

Id. at 167-68.

In contrast to the Committee functions in Mitchell v. Fishbein, the determination by a judge as to whether a given fee request by an 18-B Panel member is reasonable is clearly case-related. Compensation for cases above the misdemeanor level is set "at a rate of seventy-five dollars per hour for time expended in court before a magistrate, judge or justice and seventy-five dollars per hour for time reasonably expended out of court," N.Y.

- 13 -

County Law § 722-b(1)(b) (emphasis added), with a ceiling of $4,400, see id. § 722-b(2)(b); and reimbursement is authorized "for expenses reasonably incurred," id. § 722-b(1)(b) (emphasis added). "Each claim for compensation and reimbursement shall be supported by a sworn statement specifying," inter alia, "the time expended, services rendered, expenses incurred." Id. § 722-b(4). Except with respect to services on appeal, the "compensation and reimbursement shall be fixed by the trial court judge," who may award compensation above the normal ceiling in "extraordinary circumstances." Id. § 722-b(3). An attorney dissatisfied with the fee awarded may "request[] . . . reconsideration," N.Y. Comp. Codes R. & Regs. tit. 22, § 127.3(c), whereupon the amount awarded will be "reviewed by the appropriate administrative judge" who may modify the award if he finds that it "reflects an abuse of discretion by the trial judge," id. § 127.2(b). Thus, the functions at issue here are case-specific and not similar to the functions at issue in Mitchell v. Fishbein.

Bliven also relies on the fact that the New York Court of Appeals in Levenson v. Lippman, 4 N.Y.3d 280, 794 N.Y.S.2d 276 (2005), characterized the "award of compensation fees" for assigned counsel as an "administrative rather than a judicial act of the trial judge," id. at 291, 794 N.Y.S.2d at 281. The issue in that case was whether the State's Chief Administrative Judge had violated State law in amending pertinent regulations to provide that awards of compensation to 18-B Panel attorneys in amounts exceeding the statutory ceiling were reviewable by "the

- 14 -

appropriate administrative judge." Id. at 286, 794 N.Y.S.2d at 277. Although the State's Civil Practice Law and Rules provide generally that "[t]he appellate division shall review questions of law and questions of fact on an appeal from a judgment or order of a court of original instance," N.Y.C.P.L.R. § 5501(c), there was no provision in the County Law for any review of excess compensation awards, and the Levenson Court concluded that the State's legislature had thereby "simply created a gap in the administrative process that the Chief Administrator was entitled to fill," 4 N.Y.3d at 291, 794 N.Y.S.2d at 281; see also id. at 292 & n.*, 794 N.Y.S.2d at 281-82 & n.* (concurring opinion) (noting that the legislature had failed to enact proposed legislation calling for review by the Appellate Division, leaving "a void in oversight"). The New York Court of Appeals upheld the Chief Administrative Judge's amendment providing for review of above-ceiling awards by the appropriate administrative judge, noting that "[o]therwise, these awards would be wholly unreviewable," id. at 291, 794 N.Y.S.2d at 281 (majority opinion).

Notwithstanding the New York Court of Appeals' characterization of 18-B Panel fee awards as administrative for purposes of ensuring their reviewability, we are not persuaded that a judge's decision as to a reasonable attorney's fee is an administrative, rather than a judicial, decision for purposes of determining whether the judge is to have absolute immunity for that decision. Cf. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 477-78 (1983) (state's characterization of

proceedings as "ministerial" rather than "judicial" does not control federal court's analysis of whether a proceeding is judicial for purposes of the Rooker-Feldman doctrine because "we must for ourselves appraise the circumstances" of the proceeding (internal quotation marks omitted)). The authority to decide what is a reasonable attorney's fee for representing a client in a particular case is plainly a part of the judicial function performed in many cases. Although the general "American Rule" is that the prevailing party in federal court litigation is not entitled to recover legal fees incurred in the conduct of that litigation, see, e.g., Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975), numerous statutes allow--and sometimes require--the court to award reasonable attorneys' fees, generally to the prevailing party, but in some instances to either party, see, e.g., 42 U.S.C. § 1988(b) (in action brought under 42 U.S.C. § 1983 or various other laws to vindicate civil rights, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee" (emphases added)); 29 U.S.C. § 216(b) (in action for violation of the Fair Labor Standards Act of 1938, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee" (emphases added)); see id. § 1132(g)(1) (in a civil action by a participant, beneficiary, or fiduciary to enforce the Employee Retirement Income Security Program, "the court in its discretion may allow a reasonable

- 16 -

attorney's fee and costs of action to either party" (emphases added)).

Other statutes authorizing the court to award "a reasonable attorney's fee" to a prevailing private party include 29 U.S.C. § 626(b) (for actions under the Age Discrimination in Employment Act (incorporating the remedies provided in id. § 216(b))); 42 U.S.C. § 2000e-5(k) (for actions under Title VII of the Civil Rights Act of 1964); id. § 2000a-3(b) (for actions under Title II (public accommodations provisions) of the Civil Rights Act of 1964); id. § 3613(c)(2) (for actions under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968); id. § 1973l(e) (for actions under the Voting Rights Act); id. § 12205 (for actions under the Americans with Disabilities Act); 29 U.S.C. § 794a(b) (for actions under the Rehabilitation Act of 1973); 20 U.S.C. § 1415(i)(3)(B)(i) ("reasonable attorneys' fees" for actions under the Individuals with Disabilities Education Act); 15 U.S.C. § 15 (for civil actions under the antitrust laws); 18 U.S.C. § 1964(c) (recovery on a civil Racketeer Influenced and Corrupt Organizations claim "shall . . . includ[e] a reasonable attorney's fee"); and 28 U.S.C. §§ 2412(d)(1)(A) and (2)(A) (under the Equal Access to Justice Act, in actions by or against the United States, "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party" attorneys' fees, generally limited to $125 per hour, "unless the court finds that the position of the United States was

- 17 -

substantially justified or that special circumstances make an award unjust").

In cases under the above statutes, the governing principles and procedures are essentially the same. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) (the same standards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"). Applications for awards of fees must be documented by time records. See, e.g., id. at 437 (attorney "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); New York Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (contemporaneously created time records should "specify, for each attorney, the date, the hours expended, and the nature of the work done"). In determining what fee is reasonable, the court takes account of claimed hours that it views as "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. In so doing, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985). And in light of the district court's familiarity with the particular case, its award of attorneys' fees is reviewed only for abuse of discretion. See, e.g., Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998);

- 18 -

*In re Bolar Pharmaceutical Co. Securities Litigation*, 966 F.2d 731, 732 (2d Cir. 1992); *see generally* Hensley, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").

In all of these matters, the court performs a judicial function in assessing the attorney's documentation as to how the hours charged were spent and determining whether, in light of the case itself, the fee requested is one that is "reasonable." The result is an award--or a denial--of fees for work done in a particular case.

In sum, we see no principled difference between the nature of the task performed in setting reasonable fees under these federal fee-shifting statutes and the task performed by a family court judge in determining the fee to be awarded to the 18-B Panel attorney. In each instance, the focus is on a particular case; the attorney must document the hours he claims he spent on the issues in that case; the request is ruled on by the judge who presided over the case, and hence is familiar with the issues and the attorney's submissions; the pertinent focus is on the reasonableness of the number of out-of-court hours spent on that case; and the amount awarded by the trial judge is reviewable for abuse of discretion. Accordingly, we reject Bliven's contention that the actions of the family court judges in ruling

on his vouchers, and the supportive actions of their assisting court attorneys, were not judicial acts.

B.  Municipal Liability

Bliven also contends that the district court erred in dismissing his federal claims against the City based on its conclusion that the defendant judges were not municipal policymakers. This contention is meritless.

The matter of whether a given official is a municipal policymaker is a question of law. See, e.g., Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir.), cert. denied, 531 U.S. 813 (2000). The clear policy at issue here is that an 18-B Panel attorney should not be compensated for out-of-court time that was not "reasonably expended." N.Y. County Law § 722-b(1). That policy is established by the statute. Judges, in determining whether the attorney's expenditure of the claimed out-of-court hours in a particular case was in fact reasonable, merely apply the policy; they do not make it.

CONCLUSION

We have considered all of Bliven's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.