20-761-cv
*Salu v. Miranda*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of October, two thousand twenty.

PRESENT: DENNIS JACOBS,
PIERRE N. LEVAL,
JOSEPH F. BIANCO,
*Circuit Judges.*

---

ROTIMI SALU, GERARD M. LYNCH,

*Plaintiffs-Appellants,*

v. No. 20-761

DENISE MIRANDA, NEW YORK STATE JUSTICE CENTER, ELIZABETH M. DEVANE, DAVID MOLIK, MARY B. ROCCO, LOUIS P. RENZI, WESTCHESTER MEDICAL CENTER HEALTH NETWORK, WESTCHESTER COUNTY HEALTH CARE CORPORATION,

*Defendants-Appellees*,

DIAMOND HEALTHCARE CORPORATION, DENISE DAVIS,

*Defendants.*

---

| | |
|---|---|
| For Plaintiffs-Appellants: | MICHAEL D. DIEDERICH, JR., Diederich Law, Stony Point, NY. |
| For Defendants-Appellees Denise Miranda, New York State Justice Center, Elizabeth M. Devane, David Molik, Mary B. Rocco, and Louis P. Renzi: | MARK S. GRUBE, Assistant Solicitor (Barbara D. Underwood, Solicitor General; Anisha S. Dasgupta, Deputy Solicitor General; *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY. |
| For Defendants-Appellees Westchester Medical Center Health Network and Westchester County Health Care Corporation: | BRIAN J. CLARK (Allison B. Gotfried, *on the brief*),Venable LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiffs-appellants Rotimi Salu and Gerard Lynch (collectively, "plaintiffs") appeal from the February 5, 2020 judgment of the district court, dismissing their claims alleging employment discrimination based on race and due process and equal protection violations. Plaintiffs filed this lawsuit against Westchester Medical Center Health Network and Westchester County Health Care Corporation (collectively, "the WMC defendants"), as well as the New York State Justice Center for the Protection of People with Special Needs ("the Justice Center"), Denise Miranda, Elizabeth M. Devane, David Molik, Mary B. Rocco, and Louis P. Renzi (collectively, "the Justice Center defendants" and together with the WMC defendants, "defendants"), seeking declaratory and injunctive relief, monetary damages, and punitive damages under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Plaintiffs further requested that the district court exercise supplemental jurisdiction over certain state law claims and related proceedings pursuant to Article 78 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 7801 *et seq.* Because plaintiffs have waived many of

2

their originally pled claims on appeal (referenced in the margin below), we consider only: Salu's race discrimination claim against the WMC defendants, and Salu and Lynch's due process and equal protection claims against the Justice Center defendants.[1]

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6) or Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015). In doing so, we accept all factual allegations in the complaint as true and "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). We review a district court's decision to exercise supplemental jurisdiction over state law claims for abuse of discretion. *See Valencia* ex rel. *Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). We assume the parties' familiarity with the facts and the procedural history, which we reference only as necessary to explain our decision to affirm.[2]

## I.      Salu's § 1981 Race Discrimination Claims Against the WMC Defendants

Salu is an African American who worked as a patient care technician in the adolescent psychiatric department of the WMC. He alleges that he was jointly employed by WMC and

---

[1] Plaintiffs raised a number of claims before the district court, many of which they waived on appeal. *See Littlejohn v. City of New York*, 795 F.3d 297, 313 n.12 (2d Cir. 2015) (declining to consider an issue addressed by the district court that was not argued on appeal). This includes Lynch's claims against the WMC defendants for race discrimination, as well as Salu's due process, equal protection, and conspiracy claims under 42 U.S.C. §§ 1983, 1985, and 1986 against the WMC defendants. *See Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 92 (2d Cir. 2013) (determining that "three sentences of unsupported argument regarding" the plaintiff's claim is insufficient to trigger our examination). Moreover, plaintiffs concede that they "are no longer pursuing a § 1985 conspiracy claim." Plaintiffs Reply Br. at 24 n.17. Thus, because "a § 1986 claim must be predicated on a valid § 1985 claim," *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)), plaintiffs' § 1986 claim is waived as well.

[2] As a threshold matter, defendants object to the Court's consideration of Addenda A and B that were attached to plaintiffs' brief on appeal. Addendum A is correspondence that Salu's attorney had with the Justice Center. Addendum B appears to be the attorney's self-created list of Justice Center decisions between 2016 and 2018. We need not address defendants' argument because consideration of plaintiffs' Addenda are immaterial to our conclusion that their amended complaint was properly dismissed by the district court.

Diamond Healthcare Corporation, which is a temporary staffing agency. As set forth in the amended complaint, on or about May 2, 2016, Salu was supervising a patient ("Patient 1") in the adolescent psychiatric department when he encountered a second patient ("Patient 2") with whom he then became embroiled in a physical altercation, causing him to leave Patient 1 unsupervised. The WMC defendants viewed Salu's abandonment of Patient 1 to be a violation of their written "one-on-one supervision" policy because he negligently failed to keep Patient 1 in full view at all times. Am. Compl. ¶¶ 50–51. Salu concedes in the amended complaint that he left Patient 1 unsupervised when he was "enticed" into Patient 2's hospital room, but claims his failure to return to supervise Patient 1 was a result of being "viciously attacked" when he went into Patient 2's room. Am. Compl. ¶ 59. Patient 2 also accused Salu of assault.

New York State law requires staff members at healthcare facilities serving vulnerable individuals to report any conduct they become aware of that could constitute abuse or neglect of a patient to the Justice Center. N.Y. Soc. Serv. Law § 491. The Justice Center's core duties include maintaining a statewide central register to track and investigate such allegations of abuse and neglect by individuals who are responsible for the care of vulnerable persons. N.Y. Exec. Law § 552(1); N.Y. Soc. Serv. Law § 492. The WMC defendants referred the allegation of neglect of Patient 1 and abuse with respect to Patient 2 to the Justice Center for investigation pursuant to a mandatory reporting requirement, and suspended Salu pending the investigation. The Justice Center determined the report of neglect of Patient 1 to be "substantiated," and Salu's employment at WMC was thereafter terminated. Am. Compl. ¶ 62.

Salu requested that the report be amended to reflect that he did not commit neglect. After a hearing before an Administrative Law Judge ("ALJ"), the Justice Center issued a final determination that the allegation of neglect of Patient 1 was substantiated against Salu based upon,

4

among other findings: (1) "[a]t the time of the alleged neglect, [Salu] was assigned 1:1 constant observation of [Patient 1] due to the risk of self-mutilation and verbalized suicidal ideation," Joint App'x at 113; and (2) "[t]he record established, and [Salu] admitted in his police interview and in his testimony, that while assigned 1:1 constant observation of [Patient 1], [Salu] momentarily left [Patient 1] unsupervised in the hallway to address [Patient 2]," Joint App'x at 116.[3]

After the allegation of neglect of Patient 1 was substantiated, Salu alleges that Denise Davis, Director of Nursing at the WMC, informed Diamond Healthcare Corporation that she did not want Salu to continue to work at the WMC, and that Salu was subsequently terminated from employment by Diamond. Salu asserts that the WMC defendants terminated his assignment at WMC due to his race, and that the district court erred in concluding that he failed to establish a plausible claim for race discrimination against the WMC defendants.

As an initial matter, Salu improperly asserts a claim against the WMC defendants under 42 U.S.C. § 1981. "[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state [actors]." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Salu concedes that the WMC defendants are state actors, yet he has inexplicably abandoned his § 1983 claim by failing to raise it in his appellate brief. In any event, even assuming *arguendo* that we construe Salu's § 1981 claim as a claim under § 1983, *see Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018), the district court correctly concluded that the allegations in the amended complaint fail to withstand a motion to dismiss.

Claims for race discrimination under § 1983 are analyzed under the burden-shifting framework outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), which –

---

[3] The allegation regarding Patient 2's assault was determined to be unsubstantiated.

5

at step one – requires a plaintiff prove the following to establish a *prima facie* case: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) his treatment occurred under circumstances giving rise to an inference of discrimination. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (explaining that the *McDonnell Douglas* framework applies to Title VII, § 1981, and § 1983 claims). At the first stage under *McDonnell Douglas* on a motion to dismiss, prior to the employer's giving of its reason for its action, the plaintiff's satisfaction of the *prima facie* requirements is facilitated by a temporary presumption in the plaintiff's favor, so that the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 311). Nonetheless, in attempting to satisfy this pleading standard, "[i]t is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. N.Y.S. Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

Here, the WMC defendants concede, for purposes of this appeal, that Salu has satisfied the first three prongs of a *prima facie* case of race discrimination. Thus, the issue on appeal is whether the amended complaint contains non-conclusory allegations sufficient to support a plausible inference of discriminatory motivation by the WMC defendants in Salu's termination. We agree with the district court that the amended complaint fails to satisfy the plausibility requirement.

More specifically, Salu's discrimination claim rests on his belief that Davis, as the Director of Nursing, harbored racial animus and was responsible for Diamond's decision to terminate him after he "was determined to be guilty of statutory neglect by the Justice Center." Am. Compl. ¶ 99. That critical allegation regarding Davis's purported decision-making role, however, which

6

is necessary to render his race discrimination claim plausible against her and the WMC defendants, has no factual basis to support it, but rather is simply stated in a conclusory fashion based upon "information and belief." *See* Am. Compl. ¶¶ 69–70 ("*Upon information and belief*, the racially biased decision-maker was the WMC Director of Nursing, Denise Davis, RN. *Upon information and belief*, Director Davis, as a WMC policy-maker and decision-maker, informed Diamond that she did not want Mr. Salu to continue working at WMC. Diamond had no choice but to carry out Director Davis' command." (emphases added)). As the district court correctly held, these conclusory assertions repeatedly made "upon information and belief" are insufficient to provide a basis to conclude that the race discrimination claim is plausible. *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

Moreover, the implausible nature of Salu's central claim – namely, that the allegedly biased Davis was responsible for his termination – is demonstrated by Salu's own concession in the amended complaint that he was not terminated until the Justice Center substantiated the report of neglect against him. *See* Am. Compl. ¶ 62 ("Mr. Salu was thereafter eventually terminated by his employer after the Justice Center 'substantiated' . . . that he took his eyes off the patient he was supervising, viewing this as amounting to a neglect under N.Y.S. statute."); *see also* Am. Compl. ¶ 107 ("As a result, Mr. Salu was adjudicated by the Justice Center as being guilty of 'category 3 neglect,' which adjudication justified his job termination . . . ."). His disagreement with the Justice Center's conclusion does not substantiate, even to a minimal degree, his claims of discrimination against the WMC defendants.

In sum, the allegations fail to create a plausible inference that Salu was terminated based upon intentional race discrimination by Davis or anyone else at WMC. Accordingly, we conclude

7

that the district court properly dismissed Salu's race discrimination claims against the WMC defendants.

## II.    Plaintiffs' Claims Against the Justice Center Defendants

Both plaintiffs Salu and Lynch brought claims against the Justice Center defendants based upon their allegation that the Justice Center conspires with private employers to violate the rights of non-white healthcare workers. Like Salu, Lynch was terminated from his job at WMC. In particular, Lynch was found by the Justice Center to have committed sexual misconduct towards a female patient at WMC. Both plaintiffs assert that the Justice Center's determination that they had committed acts constituting neglect and/or abuse of patients entrusted to their care was based upon racial bias and unconstitutional procedures, and led to the wrongful termination of their employment at WMC. As set forth below, there are multiple grounds to affirm the district court's dismissal of all claims against the Justice Center defendants.

### A. Eleventh Amendment Immunity

The district court concluded that the Eleventh Amendment barred plaintiffs from proceeding in federal court on their claims for damages against the Justice Center and its officers in their official capacities. *See V.A. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (finding that the Eleventh Amendment bars damages actions asserted against a State "absent waiver or valid abrogation" of the State's sovereign immunity). It is well settled that suits against state agencies and state officers acting in their official capacities are functionally equivalent to suits against the State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984).

Here, plaintiffs seek monetary relief from a state agency – the Justice Center, and its officers in their official capacities. But New York has not waived sovereign immunity in federal court for damages claims. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d

8

Cir. 1977).  In addition, Congress did not abrogate state sovereign immunity when enacting the statutes that form the basis for the federal claims in plaintiffs' amended complaint.  *See Quern v. Jordan*, 440 U.S. 332, 338–45 (1979) (§ 1983); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (§ 1983); *Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) (§§ 1983, 1985, and 1986).

Accordingly, we conclude that the district court correctly determined that the Eleventh Amendment bars plaintiffs from proceeding in federal court against the Justice Center and its officers in their official capacities for damages.[4]

## B.  Judicial Immunity

Judges generally receive absolute immunity from "suits for money damages for their judicial actions," *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) and from suits for injunctive relief under § 1983 with certain exceptions not relevant here, *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Judicial immunity applies if (1) "the relevant action is judicial in nature" and (2) the defendant "had jurisdiction over the subject matter before him."  *Huminski v. Corsones*, 396 F.3d

---

[4] Plaintiffs also seek to remedy the "systemic and ongoing" violations of the Justice Center, Plaintiffs Br. at 57.  Specifically, plaintiffs argue purported future harms to third parties, which would theoretically overcome the Eleventh Amendment hurdle, given that state officers may properly be sued in their official capacities for prospective relief under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).  However, this argument raises another insurmountable hurdle for plaintiffs in this particular case – namely, the prudential standing requirements, which prohibit "plaintiffs from asserting the rights of third parties."  *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).  Here, plaintiffs are unable to establish that the relevant third parties, other African-American healthcare workers, are hindered or cannot assert their own rights.  *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (plaintiff bears the burden of establishing prudential standing).  Indeed, when the Justice Center makes a final determination that is unfavorable to a healthcare worker, that healthcare worker can pursue judicial review through an Article 78 proceeding.  Thus, plaintiffs have no standing to seek injunctive relief to purportedly prevent future harm to third parties.  Plaintiffs also argue that they have standing to seek injunctive relief because there is a "real possibility" that they may once again be accused of neglect or abuse and subjected to the Justice Center's procedures.  Plaintiffs Reply Br. at 19.  But plaintiffs allege no probable threat that they will again face complaints of abuse or neglect and be subject to a Justice Center adjudication.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

53, 75 (2d Cir. 2005) (quotation marks omitted). Only allegations that a defendant acted "in the clear absence of all jurisdiction" will overcome the bar of judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quotation marks omitted).

Here, judicial immunity bars plaintiffs' claims against the ALJ defendants, Elizabeth Devane, David Molik, Mary Rocco, and Louis Renzi. Plaintiffs' only interactions with the ALJ defendants were in their judicial capacities, as set forth by New York law. For instance, New York law authorizes ALJs to "determine whether the findings of [a Justice Center] report should be amended on the grounds that [the findings] are inaccurate or inconsistent" with the law. N.Y. Soc. Serv. Law § 494(1)(a); 14 N.Y.C.R.R. § 700.6(a). ALJs Renzi and Rocco oversaw plaintiffs' administrative hearings, and thereafter issued reports and recommendations as to whether the findings against plaintiffs should be amended. ALJs Devane and Molik reviewed those reports and recommendations and issued final determinations. We conclude that, for purposes of this appeal, such actions fall squarely within the core duties "normally performed by a judge." *Bliven*, 579 F.3d at 209–10 (quotation marks omitted); *see also Butz v. Economou*, 438 U.S. 478, 513 (1978) ("[T]he role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge.").

Therefore, the ALJ defendants are entitled to judicial immunity as their actions were judicial in nature, and they had jurisdiction over the subject matter before them pursuant to New York law. *See Stump*, 435 U.S. at 356–57 (quotation marks omitted). Plaintiffs' allegations of bias or misconduct are not sufficient to strip these defendants of their immunity. *See Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997) ("The cloak of [judicial] immunity is not pierced by allegations of bad faith or malice.").[5]

---

[5] As to Denise Miranda, the Justice Center's Executive Director, the district court held that she had no personal involvement in plaintiffs' cases, and thus did not reach whether she was entitled to qualified

10

## III.    Plaintiffs' State Law Claims

Finally, we conclude that the district court did not abuse its discretion when it exercised supplemental jurisdiction to dismiss certain state law claims, and declined to exercise its supplemental jurisdiction over the Article 78 claim.

Section 1367(a) of Title 28 grants federal courts supplemental jurisdiction over state law claims that are part of the same case or controversy as the asserted federal claims. *See* 28 U.S.C. § 1367(a). We review a district court's decision to exercise supplemental jurisdiction over state-law claims for abuse of discretion, *see Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), "considering whether judicial economy, convenience, fairness and comity require a different result," *Finz v. Schlesinger*, 957 F.2d 78, 84 (2d Cir. 1992) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Plaintiffs' state law causes of action, such as the New York State Human Rights Law ("NYSHRL") claim, are analytically identical to some of Salu's federal claims (namely his § 1981 claim – which we construe as a § 1983 claim – and his equal protection claim), and feature the same allegations of discriminatory conduct as those underlying his federal discrimination, constitutional, and due process claims. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (holding that discrimination claims under the NYSHRL are subject to the same framework as the related federal claims). Thus, the district court did not err by exercising supplemental jurisdiction and dismissing these claims.[6]

---

immunity. We agree with the district court's dismissal of plaintiffs' claims against Miranda based upon a failure to allege any non-conclusory allegations of Miranda's personal involvement in the final determination of plaintiffs' cases at the Justice Center, and we therefore also decline to address the qualified immunity issue. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (requiring allegation of direct personal involvement to state a § 1983 claim against a supervisory official).

[6] To the extent that plaintiffs raised their claims arising under the New York State Constitution on appeal, we conclude that the district court properly exercised supplemental jurisdiction over those claims as well,

11

Finally, as to the Article 78 claim, the district court did not abuse its discretion by declining to exercise jurisdiction. *See* N.Y. C.P.L.R. §§ 7801, 7804(b); *see also Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020).

In sum, the district court did not abuse its discretion by dismissing some state law claims and declining to exercise supplemental jurisdiction over the Article 78 claim.

* * *

We have considered all of plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

and plaintiffs have waived any arguments regarding the merits of those claims that are different from their arguments based on § 1983. *See Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) ("The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983.").