Ken CALDWELL and Lisa Caldwell, Plaintiffs,

v.

Justice Michael L. PESCE, P.J.; Justice Michelle Weston; Justice Martin M. Solomon; Chief Clerk Paul Kenny; Senior Partner Russell Polirer, Esq.; Senior Partner Kenneth Novikoff, Esq.; Senior Partner Chery [sic] F. Korman, Esq.; Gutman, Mintz, Baker & Sonnenfeldt, P.C.; and Rivkin Radler, LLP, Attorney at Law, Defendants.

No. 14–CV–4196 (JFB)(SIL).

United States District Court, E.D. New York.

Signed Feb. 3, 2015.

Ken Caldwell, Newark, DE, pro se.

Lisa Caldwell, Newark, DE, pro se.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

■ Before the Court are plaintiffs Ken and Lisa Caldwell's ("plaintiffs" or "the Caldwells") applications to proceed *in forma pauperis* filed together with their complaint against the following defendants: Justice Michael L. Pesce, P.J.; Justice Michelle Weston; Justice Martin M. Solomon; Chief Clerk Paul Kenny; Senior Partner Russell Polirer, Esq.; Senior Partner Kenneth Novikoff, Esq.; Senior Partner Chery[l] F. Korman, Esq.; Gutman, Mintz, Baker & Sonnenfeldt, P.C.; and Rivkin Radler, LLP, attorney at law.[1]

For the reasons set forth below, the plaintiffs' applications to proceed *in forma pauperis* are granted. However, the complaint is dismissed, *sua sponte,* with prejudice.

## I. BACKGROUND

### A. Prior Federal Complaint

Plaintiffs Ken and Lisa Caldwell, who are proceeding *pro se,* are no strangers to this Court. Plaintiffs' first complaint in this Court was filed on October 7, 2008 against defendants Gutman, Mintz, Baker, & Sonnenfeldt P.C. ("Gutman"); Russell

---

1. Plaintiffs also filed a "Motion to Recuse" with their complaint apparently preemptively seeking to have the undersigned and Magistrate Judge Wall recuse ourselves from presiding over their complaint. Given Magistrate Judge Wall's retirement, this case was assigned to Magistrate Judge Locke. Thus, to the extent plaintiffs seek to have a Magistrate Judge other than Magistrate Judge Wall assigned to their complaint, that issue is now moot. The Court denies plaintiffs' motion for the recusal of the undersigned. Rather than allege facts in support of their motion, plaintiffs rely on their own subjective dissatisfaction with the Court's rulings in their earlier action, 08–CV–4207 (JFB)(WDW), *Caldwell et al. v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., et al.* (the "first federal action"). Plaintiffs' allegations do not support a finding of partiality, personal bias, or prejudice under either 28 U.S.C. § 455 or 28 U.S.C. § 144, the two statutes that require recusal or disqualification in those circumstances. A motion for recusal "may be made only on the basis of alleged bias or prejudice from an extrajudicial source," not upon a court's rulings or conduct. *Goodwine v. Nat'l R.R. Passenger Corp.,* No. 12–CV–3882, 2014 WL 37850, at *2 (E.D.N.Y. Jan. 6, 2014) (internal citations and quotations omitted); *see also Raghavendra v. Trustees of Columbia Univ.,* Nos. 06–CV–6841, 08–CV–8120, 09–CV–0019, 2012 WL 2878123, at *9 (S.D.N.Y. July 13, 2012) (" '[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion....' ") (quoting *Weisshaus v. Fagan,* 456 Fed.Appx. 32, 35 (2d Cir.2012) (additional citation omitted)). There is no legal or factual basis for recusal in this case. Accordingly, plaintiffs' motion for recusal is denied.

Polirer; Fairfield Presidential Associates ("FPA"); Lightstone Group; Fairfield Presidential Management Corporation ("FPMC"); David Lichtenstein; and Debbie Ketay, (collectively, "defendants"), alleging numerous federal and state claims, including: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.;* (2) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.;* (3) violations of New York General Business Law § 349; (4) malicious prosecution; (5) abuse of process; (6) wrongful use of a civil proceeding; (7) violations of Federal Rule of Civil Procedure 11; (8) violations of the federal criminal false statements statute, 18 U.S.C. § 1001; and (9) federal criminal mail fraud, apparently under an "honest services" theory, pursuant to 18 U.S.C. §§ 1341 and 1346.

Defendants moved for judgment on the pleadings and this Court referred defendants' motion to Magistrate Judge Wall for a Report and Recommendation ("R & R"). Magistrate Judge Wall recommended that defendants be granted judgment on the pleadings and also recommended, *sua sponte,* that plaintiffs' motion to amend their complaint be denied. Plaintiffs objected to the R & R and, by Memorandum and Order dated March 30, 2010, the Court adopted the well-reasoned and thorough R & R in its entirety with the exception that the Court afforded plaintiffs leave to replead their Fair Credit Reporting Act claim. Plaintiffs filed an amended complaint, and defendants moved to dismiss it.

Plaintiffs then sought leave to file a Second Amended Complaint, which the Court granted. The Court denied defendants' motion to dismiss as moot without prejudice to renewal upon the filing of the Second Amended Complaint by the plaintiffs. Plaintiffs filed a Second Amended Complaint and defendants moved to dismiss it. By Memorandum and Order dated March 28, 2012, the Court granted defendants' motion in its entirety as to the federal claims asserted by plaintiffs. The Court also *sua sponte* dismissed with prejudice the state law claims set forth in the Second Amended Complaint. *See* 08–CV–4207, Mem. & Order, dated March 28, 2012, (Bianco, J.).

### B.  The Present Complaint

On July 7, 2014, plaintiffs filed the instant complaint in this Court against Justice Michael L. Pesce, P.J.; Justice Michelle Weston; Justice Martin M. Solomon; Chief Clerk Paul Kenny;[2] Senior Partner Russell Polirer, Esq.; Senior Partner Kenneth Novikoff, Esq.; Senior Partner Chery[l] F. Korman, Esq.; Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("Gutman"); and Rivkin Radler, LLP, attorney at law.[3] Like the earlier complaint, the present complaint is difficult to comprehend as it is voluminous and replete with not only factual allegations but references to and quotations from various statutes, codes of conduct, and case law. However, as the Court can best discern, the gravamen of the claims

---

**2.** Paul Kenny is the Chief Clerk of the Supreme Court of the State of New York, Appellate Term, Second Judicial Department. Hon. Michael L. Pesce is the Presiding Justice of the Appellate Term's 2nd, 11th, and 13th Judicial Districts. Justices Michelle Weston and Martin M. Solomon are justices of that court.

**3.** Russell Polirer is a senior partner at Gutman. He and his firm represented Fairfield Presidential Associates in the New York State civil court litigation underlying the present action. Kenneth Novikoff and Cheryl F. Korman are partners at Rivkin Radler, LLP. They represented the defendants in the plaintiffs' first federal action as well as in the underlying state court actions involving the Caldwells.

here arise from the same underlying proceedings complained of in plaintiffs' first action in this court. More specifically, plaintiffs again seek review in this court of the action against them in the Civil Court of the City of New York.

According to the complaint, the instant matter arises from a "frivolous" lawsuit filed by Gutman on behalf of its client, Fairfield Presidential Associates ("FPA"), in the Civil Court of the City of New York, Kings County, against the Caldwells, Index No. CV–2671006 ("Kings I"). (Compl. at ¶ III. (1).) The Caldwells were tenants in a residential building that is allegedly owned by Fairfield Towers Condominium. (Compl. at ¶¶ III. (12, 8–9).) Plaintiffs complain that Gutman, on behalf of FPA, sent the Caldwells collection letters in January 2006 concerning the nonpayment of rent. On February 27, 2006, Gutman filed a lawsuit in New York City Civil Court on behalf of FPA against the Caldwells for breach of lease and damages. (Compl. at ¶¶ III. (1–4).)

A civil trial was held and the Honorable Alice Fisher Rubin issued a decision on June 4, 2007, stating that the plaintiff, FPA, had "established a *prima facie* case based on credible evidence" and that the defendants did not establish a *prima facie* case on their counterclaim. (Compl. at ¶ III.(21), Ex. K.) Finding that the matter originated in the housing court where the issues of nonpayment, holdover, and abatement were adjudicated, Judge Rubin ruled that a judgment of possession was granted to FPA in the holdover action, use and occupancy were established, and FPA's claim for money damages was established. (*Id.*) In addition, Judge Rubin found that the Caldwells' counterclaim seeking further abatement could not be sustained since they had had their day in court in the underlying housing court proceeding. (*Id.*)

Plaintiffs assert in the instant complaint that these rulings are "unconstitutional, inequitable [and] directly violate and disenfranchise [plaintiffs] of their constitutional rights to due process, a fair civil proceeding and clearly demonstrate[ ] a lack of standing by the defendants and their client FPA." (Compl. at ¶ III. (21).) Plaintiffs claim that Judge Rubin "erred and ruled with bias and prejudice...." (*Id.* at ¶ III. (24).)

The Caldwells appealed the Civil Court ruling to the Appellate Term, which affirmed the order, on February 11, 2009. (*Id.* at ¶¶ III. (30–31), 33), Ex. M.) In between the entry of judgment in the Civil Court and the denial of the Caldwell's appeal, they filed their first action in this court, which was described above.

Plaintiffs also seek review of another state court proceeding in the Civil Court, *Ken Caldwell v. Gutman, Mintz, Baker Sonnenfeldt, P.C.,* Index No. CV–090357–07 ("Kings II"). There, Ken Caldwell sued Gutman for causes of action such as "wrongful use of civil proceeding" and "abuse of process." (*See* Decision & Order, dated Nov. 25, 2011, Levine, J., Ex. N–6 annexed to the Compl. at 2.) Ken Caldwell claimed that Gutman violated a number of disciplinary rules governing the Lawyer's Code of Professional Responsibility and the "Rules of Conduct" by initiating a meritless suit (Kings I) against him and his wife. (*Id.*) Gutman moved to dismiss the complaint on the grounds that the court lacked subject matter jurisdiction since plaintiff was seeking an amount of recovery beyond the jurisdictional limit of the court. (*Id.*) By Decision and Order dated June 9, 2008, the action and motion were held in abeyance pending the determination of the pending appeal of Judge Rubin's June 4, 2007 decision. The order further provided that the action could be restored to the court's calendar upon writ-

ten request once the appeal was determined. (*Id.*) The Appellate Term affirmed Judge Rubin's decision by order dated February 11, 2009 and Ken Caldwell did not move to restore the action to the court's calendar until approximately one year and one month after the Appellate Term's final order. (*Id.*)

While Kings II was stayed, the Caldwells filed the first federal action and this Court adopted the R & R dismissing the complaint on March 30, 2010, approximately nine days before the expiration of the year in which Ken Caldwell had to restore the state court civil action to the trial calendar. Accordingly, because "Caldwell was engrossed in federal litigation during the year he had to restore the instant action to the calendar, ... [Judge Levine found] that plaintiff ... set forth a reasonable explanation for his delay" and, accordingly, Judge Levine declined to dismiss the complaint on that basis. (*Id.* at 6.) However, Judge Levine dismissed the complaint on the merits, finding that plaintiff's claims were barred by *res judicata.* (*Id.* at 7.) Judge Levine further found that the FDCPA claim was time-barred since it was filed beyond the one-year statute of limitations. (*Id.*) Finally, Judge Levine ruled that, insofar as Caldwell alleged Gutman violated various attorney disciplinary rules and codes of conduct, there is no private right of action for such claims. (*Id.* at 7–8.)

Caldwell appealed Judge Levine's November 25, 2011 order and, following argument, in person by Caldwell and submitted by Novikoff, the Appellate Term affirmed the order in its entirety, without costs. (*See* Order, dated February 7, 2014, annexed to the Compl. as Exs. N7, N8 and N9.) The justices on the Appellate Term panel, namely Justices Pesce, Weston, and Solomon, are named as defendants in the instant federal complaint.

Further, plaintiffs complain about the defense lawyers' conduct in the first federal action. More specifically, plaintiffs contend that Rivkin Radler, LLP and Novikoff "filed frivolous motions to dismiss." (Compl. at 70, ¶ 30.) Plaintiffs allege that Novikoff "knowingly perjured himself in his motion to dismiss dated Jul[y] 8, 2010 to the federal court ... [and] in his reply motion to dismiss dated Aug. 20, 2010 ... [and] in his motion to dismiss dated Jun. 9, 2011...." (Compl. at 72, ¶¶ 32–34.) Plaintiffs also claim that Novikoff "obstruct[ed] discovery ... by sending a letter to Magistrate Judge [ ]Wall dated Jul[y] 16, 2009." (Compl. at 74–75, ¶ 37.) With regard to Cheryl Korman, she is mentioned in a single paragraph on page eighty of the eighty-nine page complaint. There, plaintiffs assert that Korman, as a senior partner with Rivkin Radler, LLP, "was fully aware that Ken Caldwell was entitled to a default judgment" and "was fully aware that her firm had no business representing Gutman in the civil court or state court proceeding without first receiving authorization from a civil court judge as a matter of law." (Compl. at 80–81, ¶ 44.) As a result, plaintiffs claim, *inter alia,* that Korman violated New York "CPLR 321(a)(b)." (Compl. at 80–81, ¶ 44.)

Based on the foregoing, plaintiffs assert a myriad of claims, including: (1) civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985 based on the alleged deprivation of their Constitutional rights to equal protection and due process in violation of the Fifth, Seventh, Thirteenth and Fourteenth Amendments; (2) Civil RICO claims under the Federal Racketeering Act, 18 U.S.C. § 1621; (3) violations of New York General Business Law § 349; and (4) fraud, perjury and obstruction of justice. The gist of the factual predicate for these claims is that FPA was not their landlord and, as such, had no standing to

pursue legal action against the Caldwells in state court. Relying on that premise, the Caldwells claim the state court judges and personnel "corrupt[ed] their authority" and "knowingly did not follow civil procedure" by allowing Gutman and their counsel, Novikoff, to file "frivolous motions." (Compl. at ¶ III.(42).) Plaintiffs also challenge the conduct of defense counsel in the first federal action.

All of the defendants named in instant complaint are related to the state court proceedings, either as members of the judiciary or court personnel or as counsel to the corporate entities involved in the underlying state court proceedings.

## II. STANDARD OF REVIEW

### A. Application to Proceed *In Forma Pauperis*

Upon review of plaintiffs' declarations in support of their respective applications to proceed *in forma pauperis*, the Court determines that plaintiffs' financial status qualifies them to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Therefore, plaintiffs' requests to proceed *in forma pauperis* are granted.

### B. Application of 28 U.S.C. § 1915

■ Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i-iii). The Court is required to dismiss the action as soon as it makes such a determination. *See id.* Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir.2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Moreover, at the pleadings stage of

the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir.2010), *aff'd* — U.S. ——, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000). However, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Cuoco*, 222 F.3d at 112. With these standards in mind the Court considers the plaintiffs' complaint.

## III. DISCUSSION

### A. *Res Judicata* and Collateral Estoppel

■ Notwithstanding the liberal pleading standard afforded *pro se* litigants, there are limits to how often a court can be asked to review the same allegations against the same parties or their privies. That limitation is recognized under the doctrines of *res judicata* and collateral estoppel. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.1993) (*res judicata*); *Johnson v. Watkins*, 101 F.3d 792, 794–95 (2d Cir.1996) (collateral estoppel).

■ Under the doctrine of *res judicata*, or claim preclusion, " '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir.2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)); *see also EDP Med. Computer Sys. v. United States*, 480 F.3d 621, 624 (2d Cir.2007). A district court has not only the power but the obligation to dismiss complaints *sua sponte* on *res judicata* grounds when the litigation history triggers it. *Salahuddin*, 992 F.2d at 449.

■ Similarly, " 'collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.' " *Brandstetter v. Bally Gaming, Inc.*, No. 11–CV–2594(JFB)(GRB), 2012 WL 4103917, *3 (E.D.N.Y. Sept. 18, 2012) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiff litigated in the prior proceeding be the same parties in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450(LAK)(AJP), 2005 WL 121746, at *8 (S.D.N.Y.2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issues of *res judicata* and collateral estoppel *sua sponte*, *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir.1998); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir.1995) ("Nothing ...

suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d) [section 1915(e) as amended] prior to service of the complaint."); *accord Pratts v. Coombe*, 59 Fed. Appx. 392, 393 (2d Cir.2003), and the doctrines of *res judicata* and collateral estoppel apply to *pro se* litigants. *Austin v. Downs, Rachlin, & Martin Burlington St. Johnsbury*, 270 Fed.Appx. 52 (2d Cir. 2008); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir.2002) (affirming district court's *res judicata* dismissal of an *in forma pauperis* action previously dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii)).

■ Here, as is readily apparent, plaintiffs' claims against Gutman and Polirer arise out of the same nucleus of facts as those they alleged in the first federal complaint as well as in Kings I and II. Plaintiffs' claims in each of those actions were dismissed with prejudice on the merits. "Once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties, or those in privity with the parties, concerning the transaction or series of connected transactions out of which the first action arose." *Manko v. Steinhardt*, No. 12–CV–2964 (KAM), 2012 WL 2367092, *2 (E.D.N.Y. June 20, 2012). That is precisely what has happened here. Accordingly, the claims against Gutman and Polirer are precluded and the complaint is dismissed as against these defendants with prejudice.

B. Immunity

Plaintiffs' claims against Presiding Justice Pesce, Justices Weston and Solomon, and against Chief Clerk Kenny are subject to dismissal for other reasons. Specifically, the Eleventh Amendment bars any claim for money damages against these defendants in their official capacities.

#### 1. Eleventh Amendment

To the extent that plaintiffs seek to sue Justices Pesce, Weston and Solomon, and Chief Clerk Kenny in their official capacities for money damages under § 1983, the Eleventh Amendment bars any such claim. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. " 'The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns....' " *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *W. Mohegan Tribe & Nation v. Orange County,* 395 F.3d 18, 20 (2d Cir.2004)) (alterations in original). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Eleventh Amendment immunity also extends to suits against state officers in their official capacities. *See id.* at 71, 109 S.Ct. 2304 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye,* No. 06–CV–5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state.").

Here, Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny are state officers. Specifically, Presiding Justice Pesce and Justices Weston and Solomon are state officers because they are justices of the Appellate Term, and Kenny is a state officer because he is Chief Clerk of the Appellate Term, Second Department. *See Casaburro v. Giuliani,* 986 F.Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds); *see also Davis v. State of N.Y.,* No. 90 Civ. 6170(MBM), 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), *aff'd,* 106 Fed.Appx. 82 (2d Cir. 2004). Thus, because these defendants are state officers and because New York state has not waived its sovereign immunity for suits under § 1983,[4] these defendants are immune from suits for money damages in their official capacity.

#### 2. Judicial Immunity

Defendants Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny[5] are entitled to absolute judicial immunity.

---

4. *See, Mamot v. Bd. of Regents,* 367 Fed.Appx. 191, 192 (2d Cir.2010) ("It is well-established that New York has not consented to § 1983 suits in federal court....").

5. Although Chief Clerk Kenny is not a judge, judicial immunity can extend to non-judges "who perform functions closely associated with the judicial process." *Cleavinger v. Sax-* ner, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Thus, absolute judicial immunity can apply to officials such as court clerks when the clerks perform tasks integral to the judicial process, such executing a judge's orders. *See Rodriguez v. Weprin,* 116 F.3d 62, 67 (2d Cir.1997) ("Even 'when functions that are ... administrative in character

In determining whether absolute immunity or qualified immunity applies to a particular officer, courts apply "a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment." *Forrester*, 484 U.S. at 224, 108 S.Ct. 538. "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Id.* at 227, 108 S.Ct. 538 (emphasis removed); *see also Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir.2009) (explaining, in context of suit against judge, that "[i]n employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature").

Here, Presiding Justice Pesce and Justices Weston and Solomon are entitled to absolute judicial immunity. Judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (*per curiam*). The absolute judicial immunity of the court "is not overcome by allegations of bad faith or malice" or "because the action he took was in error ... or in excess of his authority." *Id.* at 11, 13, 112 S.Ct. 286 (quotations and citations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (allegations of malice are insufficient to overcome qualified immunity); *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). This immunity may be overcome only if a judge is alleged to have taken "nonjudicial actions" or if judicial actions were taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286.

Plaintiffs' precise allegations against these particular defendants are somewhat difficult to comprehend. It is apparent, however, that, plaintiffs seek to challenge the February 7, 2014 affirmation of Justice Levine's November 25, 2011 order. Indeed, plaintiffs allege, for example, that these defendants "knowingly transferred a judgment unlawfully ..., [have] incorrectly asserted in their order dated February 7, 2014 [that] the appellant agreed to waive any future claims ..., chose[ ] not to refer to [the holdover order dated Sept. 23, 2002] in their decision dated Feb. 7, 2014 ..., [and] failed to distinguish the holdover proceeding for FPM [ ] from the proceeding for FPA for breach of lease...."

have been undertaken pursuant to the explicit direction of a judicial officer, ... that officer's immunity is also available to the subordinate.' " (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir.1992))); *McKnight v. Middleton*, 699 F.Supp.2d 507, 525 (E.D.N.Y. 2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity."); *Isasi v. Heinemann*, No. 08–CV–5284, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009) (explaining that court clerks are entitled to absolute immunity where "the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge"); *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C.Cir.1993) ("[C]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process."). On the other hand, when a judge or clerk is performing duties unrelated to the adjudicative process, only qualified immunity attaches. *See, e.g., Forrester v. White*, 484 U.S. 219, 229–30, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (finding judge not entitled to absolute immunity for decision to demote and fire a probation officer); *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 683–86 (D.C.Cir.2009) (finding that juror officer not entitled to absolute quasi-judicial immunity for dismissing allegedly disruptive grand juror because act was an administrative one, unrelated the adjudicative context).

(Compl. at 45–48.) Plaintiffs further allege that these defendants, "at every turn, ha[ve] demonstrated being biased and prejudiced toward the appellants and exhibited favoritism toward defendant's [sic] Gutman, Baker & Sonnenfeldt, P.C. and their client...." (*Id.* at 48.) In addition, plaintiffs claim that the ruling by these defendants "was hardly granted in the merits by a preponderance of the evidence" and that they "willfully disregarded the false testimony given by Debbie Ketay...." (*Id.* at 49–50.) With regard to allegations against Chief Clerk Kenny, plaintiffs claim that he, "as the first line of defense along with the court clerks and his staff failed to enforce civil procedure and substantive law ... by grant[ing] two enlargements [of time] requested [by the defendants] ... and accepted a third request that was granted by the Appellate term." (*Id.* at 61.) Plaintiffs further allege that Chief Clerk Kenny "fail[ed] to reject motions filed by the defendants" and "accepted a document that should have [been] rejected...." (*Id.* at 62.)

As is readily apparent, Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny are entitled to absolute judicial immunity.[6] Even liberally construed, plaintiffs allege no acts performed by these justices that fall outside the scope of absolute judicial immunity. Accordingly, the claims against Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny for money damages are barred by judicial immunity and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

▮ Further, to the extent plaintiffs sue Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny seeking injunctive relief pursuant to Section 1983, the claims also must be dismissed. Pursuant to the Federal Courts Improvement Act of 1996 ("FICA"), Pub.L. No. 104–317, § 309(c), 110 Stat. 3847 (1996), injunctive relief is barred in any Section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* § 309(c), 110 Stat. at 3853 (amending 42 U.S.C. § 1983); *see Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998) ("Congress amended § 1983 to bar injunctive relief 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.'" (quoting 42 U.S.C. § 1983)). Plaintiffs do not allege that a "declaratory decree was violated" or that "declaratory relief was unavailable." 42 U.S.C. § 1983, *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). Indeed, declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *Ashmore v. Prus,* No. 13–CV–2796, 2013 WL 3149458, at *4 (E.D.N.Y. June 19, 2013) (citing *LeDuc v. Tilley,* No. 05–CV–157, 2005 WL 1475334, at *7 (D.Conn. June 22, 2005) (citing cases)). Accordingly, plaintiffs' claims against Presiding Justice Pesce, Justices Weston and Solomon, and Chief Clerk Kenny seeking injunctive relief are foreclosed and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

### C. The *Rooker Feldman* Doctrine

▮ Insofar as plaintiffs seek to relitigate Kings II, and the affirmation of the Judge Levine's decision therein by the Ap-

---

**6.** Because each of the challenged actions performed by Chief Clerk Kenny are tasks that can only be described as integral to the judicial process, Chief Clerk Kenny is likewise entitled to absolute judicial immunity. *Rodriguez,* 116 F.3d at 66.

pellate Term, *Rooker–Feldman* also at least partially precludes plaintiffs from bringing this action. The Second Circuit has delineated four requirements for the application of the *Rooker–Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir.2005) (internal citations and quotations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.*

### 1. Procedural Requirements

The procedural requirements are met here. First, plaintiffs lost in state court as evidenced by the civil court judgment and affirmation thereof by the Appellate Term.

Second, the civil court judgment was rendered before the instant district court proceedings were commenced on July 7, 2014. Whether plaintiffs seek review of Justice Levine's November 25, 2011 Order or the Appellate Term's February 7, 2014 affirmation thereof, each of those challenged judgments were rendered well before the instant district court complaint was filed. Accordingly, the procedural requirements of *Rooker–Feldman* are met.

### 2. Substantive Requirements

The substantive requirements are met as well, at least with respect to some of plaintiffs' claims. The substantive requirements of *Rooker–Feldman* are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and

rejection of that judgment." *Hoblock*, 422 F.3d at 85.

Here, read as a whole, the complaint appears to allege that the defendants who are attorneys in this case have engaged in a pattern of vexatious litigation and harassment of plaintiffs since approximately 2001 and that the defendants who are members of the judiciary have endorsed such conduct. Because of this pattern of litigation and harassment, plaintiffs have suffered emotional and financial injury. (*See* Compl. at 83–85.) The 2011 civil court judgment and affirmation thereof on February 7, 2014 are clearly part of this pattern, and the complaint can be construed as alleging injuries that occurred as a result of the judgment and affirmation by the Appellate Term. For example, the complaint claims that "the proceedings in the Civil Court of the City of New York of Kings County [were] nothing more than corruption of authority and failure to verify proof of deed of ownership...." and the justices of the Appellate Term affirmed "on Feb. 7, 2014 [while they] were fully aware it was unlawful to name FPA as the landlord...." (*Id.* at 27, ¶ 42, and at 38, ¶ 53.) Additionally, the complaint alleges that plaintiffs have suffered financial and emotional distress as a result of defendants' conduct. Construed this way, the civil court judgment and affirmation thereof were a cause of plaintiffs' injuries, and this Court would necessarily have to review the state court judgment to decide plaintiffs' claims. *Cf. Stanley v. Hollingsworth*, 307 Fed.Appx. 6, 9 (7th Cir.2009) (finding *Rooker–Feldman* doctrine barred malicious prosecution claim in which plaintiff "ask[ed] the federal district court to rule that the state court erred in its foreclosure judgment because of the misconduct of his litigation adversaries"); *Nader v. Democratic Nat'l Comm.*, 555 F.Supp.2d 137, 155 (D.D.C.2008) (holding that *Rook-*

*er–Feldman* barred malicious prosecution claims related to previous cases that did not end in plaintiff's favor because, to succeed on claims, plaintiff would need to attack the validity of the prior judgments). Therefore, *Rooker–Feldman* bars the claims relating to these allegations.

### D. Claims Against Rivkin Radler, LLP, Novikoff, and Korman

■ With regard to plaintiffs' allegations against Rivkin Radler, LLP and two of its partners, Novikoff and Korman, the Court finds that they have not stated a plausible claim for relief against any of these defendants. Accordingly, the complaint is dismissed with prejudice as against these defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

As noted above, plaintiffs complain about the defense lawyers' conduct in the first federal action, contending that Novikoff filed "frivolous motions to dismiss," (Compl. at 70, ¶ 30.), "knowingly perjured himself" in various documents filed before the court, (*Id.* at 72, ¶ 32–34), and obstructed discovery, (*Id.* at 74–75, ¶ 37). Plaintiffs also claim that Cheryl Korman violated New York "CPLR 321(a), (b)." (*Id.* at 80–81, ¶ 44.)

As an initial matter, Section 321 of the New York CPLR governs the procedures for the withdrawal or change of counsel in state court and authorizes the *pro se* appearance of individuals in state court. *See* N.Y. C.P.L.R. § 321. It does not provide for a private right of action nor is relief available under that section. *See id.* Thus, insofar as plaintiffs seek to assert a claim for relief against Korman under CPLR § 321, such claim is not plausible and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

■ Plaintiffs' remaining allegations against Rivkin Radler, LLP and Novikoff, at best, seek reconsideration of this Court's rulings in the first federal action. Motions for reconsideration may be filed pursuant to Federal Rules of Civil Procedure 59(e) or 60(b). The standard for granting a motion for reconsideration pursuant to Rule 59(e) is "strict, and reconsideration will generally be denied." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F.Supp.2d 282, 283 (E.D.N.Y.2001) (internal quotation and citation omitted). A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked "controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." *Id.* at 284 (internal quotation and citation omitted). Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Id.*

■ Rule 60(b) of the Federal Rules of Civil Procedure also permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances. Fed.R.Civ.P. 60(b); *House v. Sec'y of Health and Human Servs.*, 688 F.2d 7, 9 (2d Cir.1982). The Second Circuit has instructed that Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *accord United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir.1994).

Local Rule 6.3 provides that motions for reconsideration must be served within fourteen days after the entry of a court order. E.D.N.Y Local Civ. R. 6.3. Judgment was entered on March 29, 2012 in the first federal action following the Court's March 28, 2012 Order granting the defen-

dants' motion to dismiss the complaint. *See* Docket Entry Nos. 88–89 under 08–CV–4207. Plaintiffs' present complaint was filed on July 7, 2014, well beyond the time period specified in Local Civil Rule 6.3.

However, affording the *pro se* complaint a liberal construction, the Court considers whether relief is available to plaintiffs under Federal Rule of Civil Procedure 60, which provides that such motions "must be made within a reasonable time" or, for motions made under certain subsections of Rule 60, "no more than a year after the entry of judgment." Fed.R.Civ.P. 60(c)(1). Moreover, "[a]n untimely motion for reconsideration [pursuant to Local Civil Rule 6.3] is treated as a Rule 60(b) motion." *Manney v. Intergroove Tontrager Vertriebs GMBH,* No. 10–CV–4493, 2012 WL 4483092, at *1, n. 2 (E.D.N.Y. Sept. 28, 2012) (quoting *Lora v. O'Heaney,* 602 F.3d 106, 111 (2d Cir.2010)). Given that plaintiffs allege "misconduct by an opposing party" and their counsel, plaintiffs seek reconsideration pursuant to Rule 60(b)(3). Thus, because they seek reconsideration well beyond the one-year time within which to seek reconsideration under Rule 60(b)(3), their claims are now foreclosed. Fed.R.Civ.P. 60(c)(1); *Brown v. State Farm Fire & Cas. Co.,* 574 Fed.Appx. 46 (2d Cir.2014) ("The time limits placed on a Rule 59(e) or Rule 60(b) motion may not be extended by the district court.") (citing *Lichtenberg v. Besicorp Group Inc.,* 204 F.3d 397, 400–01 (2d Cir.2000) (additional citation omitted)).

Moreover, plaintiffs already moved for reconsideration in the first federal action, which was denied by Order dated October 8, 2013. Accordingly, there is no avenue for further review of the first federal action in this court. Thus, plaintiffs' claims against Rivkin Radler, LLP and Novikoff are not plausible and are dismissed with

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Leave to Replead

The Court has also considered whether plaintiff should be given an opportunity to replead. The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotation omitted). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008). Though mindful of the plaintiffs' *pro se* status, the Court finds that any attempt to amend the complaint would be futile.

Here, the deficiencies in plaintiffs' claims are substantive in nature and, as such, cannot be remedied by amendment. Accordingly, the court declines to grant plaintiffs leave to file an amended complaint.

### F. The All Writs Act

The Court has the obligation to protect the public and the efficient administration of justice from litigants who have a history of filing vexatious and harassing complaints because of the needless expense imposed on the parties and the unnecessary burden on the court. *Lau v.*

*Meddaugh,* 229 F.3d 121, 123 (2d Cir. 2000). The All Writs Act, 28 U.S.C. § 1651, permits a court, under certain circumstances, to sanction a vexatious litigant who abuses the judicial process by enjoining him or her from pursuing future litigation without first obtaining leave of the court. *Malley v. New York City Bd. of Educ.,* 112 F.3d 69, 69–70 (2d Cir.1997); *Horoshko v. Citibank N.A.,* 373 F.3d 248, 250 (2d Cir.2004). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. *See, e.g., Malley v. New York City Board of Educ.,* 112 F.3d 69 (2d Cir.1997) *(per curiam )* (filing injunction may issue if numerous complaints filed are based on the same events); *In re `Martin–Trigona,* 9 F.3d 226, 227–28 (2d Cir.1993). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) *(per curiam );* *MLE Realty Associates v. Handler,* 192 F.3d 259, 261 (2d Cir.1999).

▆▆ Although this is plaintiffs' second frivolous lawsuit regarding the same subject matter, the Court in its discretion does not believe that the drastic sanction of a litigation injunction, or any other sanction, is warranted at this juncture, especially because the Court was able to dispose of this lawsuit in a *sua sponte* order, without a formal motion by the defendants. However, the Court is concerned, given the instant action, together with docket number, 08–CV–4207, that plaintiffs may try to file a new action against these defendants again seeking redress for the alleged wrongdoing surrounding the underlying civil court proceedings. Of course, plaintiffs' continued filing of frivolous com-

plaints relating to this issue would constitute an abuse of the judicial process. Given the Court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," *Lau,* 229 F.3d at 123, plaintiffs are warned that similar, future complaints will not be allowed to continue. If plaintiffs persist in this course of action, the Court will require that plaintiffs show cause why they should not first seek leave of Court before submitting such filings.

Finally, plaintiffs are cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, *Ginther v. Provident Life and Cas. Ins. Co.,* 350 Fed.Appx. 494, 496 (2d Cir.2009) (upholding a district court's imposition of sanctions against a *pro se* litigant), and that should they file another frivolous complaint, it is within the Court's realm to also consider other sanctions, including monetary sanctions. *See* Fed.R.Civ.P. 11.

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' application to proceed *in forma pauperis* is granted and the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.